PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2083
_____

TIMOTHY J. ROSS

v.

DAVID VARANO;
PA STATE ATTORNEY GENERAL

PA State Attorney General,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-11-cv-00838)
District Judge:  Hon. William W. Caldwell
_____

Argued December 13, 2012

Before:  GREENAWAY, JR., GREENBERG and COWEN,
Circuit Judges

(Opinion Filed: April 5, 2013)

Matthew D. Fogal, Esquire
Franklin County District Attorney
Zachary I. Mills, Esquire (argued)
David W. Rahauser, Esquire
Franklin County Office of District Attorney
157 Lincoln Way East
Chambersburg, PA 17201

   Attorneys for Appellant

James V. Wade, Esquire
Federal Public Defender
Frederick W. Ulrich, Esquire (argued)
Assistant Federal Public Defender
Office of Federal Public Defender
Suite 306
100 Chestnut Street
Harrisburg, PA 17101

   Attorneys for Appellee

_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

## I. INTRODUCTION

The Attorney General of Pennsylvania (the "Commonwealth") appeals from an order of the District Court dated December 29, 2011, denying the Commonwealth's motion to dismiss the habeas corpus proceedings brought by the petitioner, Timothy J. Ross, as untimely and granting equitable tolling from the one-year statute of limitations of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d), in this action under 28 U.S.C. § 2254. The Commonwealth also appeals from a subsequent order of the District Court dated March 16, 2012, granting Ross substantive habeas corpus relief.

This case arose in the aftermath of Ross's conviction of first degree murder by a jury in the Franklin County, Pennsylvania, Common Pleas Court on June 14, 2000, and his sentence based on that conviction of life imprisonment on June 21, 2000. For reasons that we will explain, Ross was unable to obtain a state appellate court review of his conviction and sentence. He subsequently brought this habeas corpus case charging that because his attorney wrongfully abandoned him, he lost his appellate rights in violation of the Sixth Amendment.[1]

_____

[1] We recognize that this right is founded in the Due Process Clause. While Ross does not have a constitutional right to appeal, see McKane v. Durston, 153 U.S. 684, 14 S.Ct. 913 (1894), "if a State has created appellate courts . . ., the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." Evitts v. Lucey, 469 U.S. 387, 393, 105 S.Ct. 830, 834 (1985). Consequently, "[a] first appeal as of right . . . is not adjudicated in accord with due process of law

3

Although the AEDPA statute of limitations, in terms, barred this action as untimely, the District Court found that equitable tolling of the running of the statute was warranted because Ross had been diligent in pursuing his state court appellate remedies but that extraordinary circumstances beyond his control frustrated this attempt.

The District Court reached its conclusion with respect to equitable tolling by adopting a report and recommendation of a magistrate judge that he submitted to the Court following an evidentiary hearing on November 3, 2011. The testimony at the hearing demonstrated that Ross, though diligent in attempting to prosecute what should have been a routine appeal in the state courts, was unsuccessful in this attempt by reason of extraordinary circumstances attributable to his attorney's extreme neglect of his case. This neglect included the attorney missing deadlines for filing documents with the state courts, the attorney's failure to communicate with Ross, and the attorney's misleading statements when he did communicate with Ross. Moreover, when Ross sought to remedy the situation by filing a motion for appointment of a new attorney, the Common Pleas Court denied his motion. Ross's mental health issues, limited education, and limited cognitive ability magnified his problems. Moreover, Ross's status as a prison inmate placed structural obstacles in his path when he attempted to pursue state court appellate proceedings. Subsequently, on March 16, 2012, the District Court adopted a second report and recommendation by the magistrate judge and in so doing granted Ross substantive

---

if the appellant does not have the effective assistance of an attorney." Id. at 398, 105 S.Ct. at 836 (footnote omitted).

relief for the same reasons that it denied the Commonwealth's motion to dismiss his petition. The magistrate judge based the second report and recommendation on the same record on which he had predicated his original report and recommendation. The District Court's order required the Commonwealth to reinstate Ross's direct appeal from his conviction within 90 days.

On this appeal the Commonwealth contests the District Court's findings and argues that the Court incorrectly applied equitable tolling principles. According to the Commonwealth, Ross did not diligently pursue his appellate rights between 2004 and 2008, despite being required to do so continuously during the entire period in which he was exhausting his state remedies, as required to preserve his claim for equitable relief from the AEDPA's statute of limitations, prior to bringing these habeas corpus proceedings. For the reasons that we set forth, we will affirm the District Court's decision and order tolling the running of the statute of limitations with respect to Ross's habeas petition, so that the filing of the petition will be deemed timely. We also will affirm its grant of a writ of habeas corpus on the same basis that the Court tolled the running of the statute of limitations. We, however, will remand the case to the District Court with instructions to modify its order that the Commonwealth reinstate Ross's appeal, and, instead, to order Ross's release within 90 days unless the Commonwealth reinstates Ross's right to appeal from his conviction and sentence within that period.[2]

---

[2]Throughout this opinion when we refer to the District Court making findings of fact we are referring to the Court adopting

5

## II. FACTS AND PROCEDURAL HISTORY

The details of the proceedings in the state courts following Ross's sentencing in the Common Pleas Court are convoluted and lengthy, but inasmuch as it is necessary to understand them to make an analysis of the equitable tolling issue, we recite them in great detail. The facts largely were developed at the evidentiary hearing before the magistrate judge, though much of the record in this case consists of documents filed in the state courts.

As we have indicated, Ross was convicted of first degree murder on June 14, 2000, in the Common Pleas Court.[3] In an order dated July 11, 2000, that court appointed an attorney,

the magistrate judge's report and recommendation making the findings. As a matter of convenience we will refer to the Franklin County Common Pleas Court simply as the Common Pleas Court as the only state trial court proceedings in this matter were in Franklin County.

[3]The murder appears to have been precipitated by a bar fight. Though we have not studied the transcripts of the trial as we have had no need to do so to resolve the narrow issue before us, we note that the parties' briefs indicate that Ross had been arguing in a bar with the victim, Drake Luckett, and exited the bar shortly before Luckett. When Luckett left the bar, Ross shot him three times in the chest. Luckett was alive when the police arrived but subsequently died of his wounds. Appellant's br. at 12; Appellee's br. at 4.

Christopher Sheffield, to represent Ross in "all post-sentence proceedings including appeal." In the same order, the court stayed the time for filing an amended post-sentence motion by ten days "to permit new counsel to consult with Mr. Ross."[4] J.A. at 328.

Following Sheffield's appointment, Ross wrote to Sheffield in July, September, and October 2000 suggesting strategies for his appeal and asking for basic information as to the status of his case. When Sheffield did not respond, Ross also wrote to his trial attorney asking for his assistance because Sheffield had not contacted him. Ross's former attorney forwarded Ross's correspondence to Sheffield on October 9, 2000. Sheffield did not respond to any of these four letters sent over a period of approximately two and one-half months. Furthermore, Sheffield did not file a post-sentence motion within the extended ten-day period the Common Pleas Court allowed for the filing of such a motion when it appointed him to represent Ross.

On October 16, 2000, Ross wrote to the clerk of the Common Pleas Court to inquire about what steps he might take

---

[4]Under Pennsylvania's post-sentencing procedures, a defendant must file a post-sentence motion within 10 days of the imposition of sentence for it to be timely. If the defendant files a timely post-sentence motion he then has 30 days after the order on the motion is entered to file a notice of appeal. If the defendant does not file a timely post-sentence motion, he has 30 days from the imposition of the sentence to file an appeal. 234 Pa. Code § 720.

to pursue his appeal. On December 11, 2000, five months after the Common Pleas Court appointed him to represent Ross, Sheffield, without informing Ross, filed a motion in that court on Ross's behalf for leave to appeal nunc pro tunc. The court granted this motion on December 13, 2000. On January 1, 2001, Ross wrote to the judge assigned to his case in the Common Pleas Court, explaining that he had not heard anything about his case since the court had appointed Sheffield to represent him. Ross also filed a pro se motion for appointment of a new attorney on January 5, 2001. On January 11, 2001, the court denied this motion because "the record indicates that petitioner's court-appointed counsel recently filed a motion for transcripts and leave to file an appeal nunc pro tunc, which was granted by this court on December 13, 2000." J.A. at 270.

On January 15, 2001, after receiving a copy of this order denying his motion from the court, Ross wrote an apologetic letter to Sheffield in which he requested copies of the appeal documents in his case and emphasized how important the appeal was to him because he was serving a term of life in prison. However, despite the many beseeching letters from his client, Sheffield did not file a notice of appeal to the Superior Court of Pennsylvania until May 9, 2001, six months after the Common Pleas Court granted him leave to do so, and then, apparently, only in reaction to a phone call that the Common Pleas Court made to him indicating its concern that it had not yet seen an appeal filed.[5] Ross testified at the evidentiary hearing before the

[5]Sheffield sent the following letter to the Common Pleas Court on May 9, 2001: "Dear Judge Walker, The Court Administrator called me, and upon my return call he informed

magistrate judge that he did not receive a copy of that notice of appeal. On June 8, 2001, a month after receiving the telephone call from the court, Sheffield visited Ross in prison for the first and only time during the approximately eight years that he was Ross's attorney of record and at that meeting assured Ross that his appeal was moving forward. During the meeting Ross stressed that he had sent several letters to Sheffield outlining the issues he felt needed to be raised on appeal.[6]

Notwithstanding his representation to Ross that his appeal was going forward, on June 11, 2001, Sheffield filed a petition with the Common Pleas Court for leave to withdraw Ross's direct appeal and, instead, to file post-trial motions nunc pro tunc for the purpose of establishing an ineffective trial counsel claim. Sheffield explained in this petition that, after his meeting with Ross, "it became evident" to him, apparently for the first time in the almost full year that he had represented Ross, "that there are issues regarding ineffectiveness of trial counsel" and that those issues must "be decided by the trial court and a record on those issues be made prior to continuing on direct appeal." Id. at 276-77. Though our result is not dependent on the point, we believe that in filing this petition Sheffield was implying that he intended to submit these post-trial motions pursuant to Pennsylvania's Post Conviction Relief

me of your concern regarding proceeding in the [J.K. case] and the above referenced [Ross case.]" J.A. at 272.

[6]The record also indicates that Sheffield's purpose in visiting Ross was in part to interview Ross about his former cellmate whom Sheffield also was representing.

Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 et seq. (West 1998). Sheffield, however, did not refer to the PCRA in his petition for leave to withdraw the appeal and could not answer questions about the PCRA at the evidentiary hearing before the magistrate judge.

The Common Pleas Court granted the petition on June 18, 2001, to the extent of giving Ross leave to petition the Superior Court to withdraw his direct appeal. Moreover, the Common Pleas Court instructed Sheffield to file post-trial motions in Ross's case within 30 days after what it correctly anticipated would be the grant by the Superior Court of the petition to withdraw Ross's direct appeal.[7] On August 30, 2001, two months and 12 days after the Common Pleas Court granted his petition, Sheffield filed a petition with the Superior Court to withdraw Ross's direct appeal, which the Superior Court granted on September 4, 2001. Sheffield, however, never filed post-trial motions with the Common Pleas Court, despite that court having directed him to do so within 30 days of the Superior Court's anticipated grant of his petition to withdraw Ross's direct appeal.

In addition to the letters to which we already have

---

[7]The Common Pleas Court gave this instruction because Sheffield should have submitted the motion to withdraw the appeal originally to the Superior Court, a further indication (in addition to Sheffield's testimony on November 3, 2011, before the magistrate judge) that Sheffield was not well-versed in appellate procedures in criminal cases in Pennsylvania.

referred, there are copies of seven additional letters in the record dated June 26, 2001, October 17, 2001, January 7, 2003, March 31, 2003, May 18, 2003, June 14, 2003, and September 6, 2003, from Ross to Sheffield inquiring about the status of his appeal. On December 3, 2001, Sheffield's secretary wrote a brief letter to Ross indicating that she shortly would be sending him a copy of his original trial transcript, and the record indicates that Ross received the transcript later that month. The District Court noted in describing this communication that "even as counsel provided this rudimentary information to Ross, he failed to disclose a greater truth to the petitioner . . . that he had withdrawn Ross' appeal months earlier, and had taken no further action to pursue any post-conviction relief for Ross." J.A. at 58.

The record contains only three letters from Sheffield to Ross in response to Ross's inquiries, all written between March and September 2003. In a March 25, 2003 letter Sheffield informed Ross that he "just noticed [Ross's] letter of January 8, 2003 in the file. I will be following up on your matter to see exactly where it stands."[8] Id. at 301 (emphasis added). Two months later in a May 30, 2003 letter to Ross, Sheffield implied that the Superior Court had misplaced Ross's file, and assured Ross that he would take appropriate action once the file was located, or within a short period of time if the file could not be

---

[8] It seems clear from the record that Sheffield was referring to Ross's letter dated January 7, 2003, the postmark of which was January 8, 2003.

located.[9]  In a September 11, 2003 letter to Ross, Sheffield indicated that he would file a <u>nunc</u> <u>pro</u> <u>tunc</u> appeal by the end of that month but, in fact, he never filed that appeal or, for that matter, any other appeal for Ross other than the appeal that the Superior Court had dismissed on Sheffield's petition.

On February 8, 2004, Ross wrote to the clerk of the Common Pleas Court requesting a copy of the docket in his case so that he could determine whether Sheffield had filed a <u>nunc</u> <u>pro</u> <u>tunc</u> appeal as he had promised.  There is then a gap in the paper record, at least as presented on this appeal, until four years later, when, on April 15, 2008, Ross again wrote to the clerk of the court requesting an update on the status of the appeal, which

_____

[9]Sheffield's letter recited that:  "I believe your file was never returned from Superior Court from the [sic] when we filed a Motion to withdraw your appeal and seed [sic] instead Post-trial motions as we discussed.  Once your file is located, or within a short time even if your file is not located, I will be moving to place your matter back on the court docket."  J.A. at 309.  There is, however, no indication in the record of which we are aware to support Sheffield's assertion that the Superior Court somehow misplaced or misdirected the file in Ross's case.  Sheffield went on to suggest in that same letter that when he did make a motion "to place your matter back on the court docket, . . . [i]t may be through an appeal Nunc Pro Tunc, as you suggest, although technically it appears that you have never lost your immediate right to an appeal so I would not recommend jumping immediately to a Nunc Pro Tunc position."  <u>Id.</u>

he had been led to believe that Sheffield had filed on his behalf. Although there is no paper trail on the point, in testimony which the District Court accepted as true, Ross testified that he repeatedly and regularly called[10] and wrote Sheffield between 2004 and 2008, and also enlisted his father's help to communicate with Sheffield, but that his efforts were fruitless. In addition, after receiving a copy of the docket from the clerk of the Common Pleas Court in 2004, Ross unsuccessfully attempted to find a "jailhouse attorney" to represent him. Id. at 231.

In addition to seeking relief by having Sheffield file a direct appeal for him, on June 26, 2008, Ross, acting pro se, filed a Common Pleas Court petition for post-conviction collateral relief, a step that Sheffield never had undertaken on his behalf. It appears that Ross, by filing his petition, caused the Common Pleas Court to take action in his case for, on July 2, 2008, that court appointed a new attorney, Joseph Curcillo, to represent Ross.

On July 10, 2009, Curcillo filed an amended PCRA motion to reinstate Ross's appellate rights with the Common Pleas Court.[11] On November 17, 2009, the Common Pleas

---

[10]Ross testified that it was his habit to call Sheffield approximately twice a month, but that usually Sheffield's office refused to take his calls. Sheffield confirmed that his office would not always accept collect calls from inmates.

[11]It is unclear why Curcillo did not file this motion until more than one year after his appointment. We note, however, that

13

Court, noting that the Commonwealth had agreed to the order, entered an order reinstating Ross's appellate rights nunc pro tunc and giving Ross and his attorney what seems to us to be a generous period of 120 days to file an appeal from the underlying conviction and sentence. Curcillo filed a notice of appeal to the Superior Court on January 28, 2010, within the 120-day period, and on February 5, 2010, in response to Curcillo's motion, the Common Pleas Court granted Ross in forma pauperis status. On February 24, 2010, Curcillo submitted a concise statement of errors complained of on appeal to the Common Pleas Court, which transmitted the case to the Superior Court on March 23, 2010.

On September 28, 2010, the Superior Court issued a per curiam order reversing the November 17, 2009 order of the Common Pleas Court that had granted Ross relief under the PCRA allowing him to appeal from his conviction and sentence.[12] Ross then filed another pro se PCRA petition in the

the Common Pleas Court docket indicates that there was additional correspondence from Ross to the court in June 2009.

[12]The District Court concluded that when the Superior Court reversed the Common Pleas Court's reinstatement of Ross's direct appeal rights, an action in which the Commonwealth had acquiesced, "in a telling and tacit recognition of the extraordinary circumstances of this case," the Superior Court evidently had been "unaware of Ross' tortured history with his prior counsel [and therefore] simply found that the appeal did not fall within any clearly recognized statutory exceptions

14

Common Pleas Court, contending that Curcillo had been ineffective. However, on November 10, 2010, that court, in an order including language suggesting that it believed the Superior Court opinion had required it to enter, dismissed the petition.

On November 24, 2010, Ross again filed an appeal to the Superior Court in the Common Pleas Court, this time from the November 10, 2010 order. Ross also again moved in the Common Pleas Court for leave to proceed in forma pauperis. On December 1, 2010, the Common Pleas Court granted Ross's motion to proceed in forma pauperis and gave him 21 days to submit a statement of errors complained of on appeal. On December 20, 2010 (seemingly mindful of the court's 21-day deadline for submission of a statement of errors), Ross withdrew his November 24, 2010 appeal, and, instead, on December 28, 2010, filed a petition for post-conviction collateral relief in the Common Pleas Court. That court, however, denied the petition on January 10, 2011.

Following a decade of procedural frustration in the state courts, Ross filed a pro se petition for a writ of habeas corpus (the "habeas petition") in the District Court on May 4, 2011. On June 7, 2011, the Commonwealth filed a motion to dismiss the

under the state post-conviction relief act, authorizing reinstatement of appellate rights." J.A. at 62. The District Court concluded that it was "[o]n the basis of this reading of state law, and without the benefit of the disturbing factual context of this case" that the Superior Court had "quashed and dismissed Ross' appeal." Id.

15

habeas petition, arguing that it was statutorily untimely and that the running of the statute of limitations should not be equitably tolled to render the habeas petition timely because although a "duly diligent petitioner may be allowed some time in order to realize that he has been abandoned by counsel, . . . five years is clearly too long." Id. at 147. In particular, the Commonwealth contended that Ross had not been reasonably diligent between the time that Sheffield wrote him on September 11, 2003, and the time Ross once again began his direct communications with the Common Pleas Court on April 15, 2008. The District Court appointed an attorney to represent Ross in the habeas corpus proceedings on July 18, 2011, and deferred ruling on the motion to dismiss.

The District Court referred the habeas petition to a magistrate judge who conducted the evidentiary hearing to which we have made reference on November 3, 2011, on the motion to dismiss the habeas petition. During that hearing, Ross and Sheffield testified with respect to Ross's claim that Sheffield had abandoned him. There also was testimony addressing Ross's efforts to pursue his appeal.[13] Sheffield's

---

[13]Both the Commonwealth and Ross were aware that the findings of fact resulting from the hearing on the motion to dismiss would be directly pertinent to the issue of equitable tolling with respect to both the motion to dismiss and, if that motion was denied, the substantive disposition of the habeas petition. In this regard, at the beginning of that hearing the magistrate judge stated: "I have spoken with the parties before this proceeding began and have noted for them that it is my view that there is a substantial overlap between the factual

testimony was remarkable because he seemed to know very little about Ross's case, a circumstance that he attributed to the fact that he had sent the file in Ross's case to Curcillo, Ross's new attorney.

As we stated previously, Ross testified that he regularly attempted to telephone and correspond with Sheffield between 2004 and 2008. Ross, however, was unable to produce any documentation supporting his claim that he made those efforts because there was no record of his telephone calls, and much of the documentation reflecting his written attempts had been lost during his transfers among different correctional facilities.[14]

issues that need to be addressed on this question of abandonment for purposes of statute of limitations and the issue of whether the abandonment, if found, would constitute a violation that would entitle the petitioner for relief, that is, reinstatement of direct appellate rights. And it is my understanding that the parties agree with me that there is a substantial factual overlap there, although that there are substantial factual issues that have to be developed here today. Is that correct, Counsel?" At that time the attorneys agreed with the magistrate judge's statements. J.A. at 153.

[14]The record indicates that certain documentation was lost, perhaps because of the practice of the Pennsylvania prison authorities to leave the packing of a prisoner's personal effects to the prisoner's cellmate when the prisoner is being relocated. In these circumstances, Ross's testimony that he had lost possessions when being moved to a different facility is hardly surprising.

17

Ross also testified at the evidentiary hearing that Sheffield's office often did refuse to take his calls, and Sheffield's testimony indicated that sometimes his office did refuse to take inmates' calls, particularly if Sheffield was not available to speak to the inmate. As we have indicated, however, Sheffield could not recall the details of Ross's case, nor could he testify as to the proper avenues of appeal or to post-conviction motion procedures under Pennsylvania law. Overall, Ross's and Sheffield's testimony, to the extent that Sheffield knew anything about Ross's case, was not inconsistent.

On November 4, 2011, the magistrate judge issued his report and recommendation (the "first R&R"), recommending that the District Court deny the Commonwealth's motion to dismiss Ross's habeas petition. The District Court adopted the first R&R in an order of December 29, 2011, in which it remanded the case to the magistrate judge for consideration of the habeas petition on the merits.

Subsequently, on January 11, 2012, the magistrate judge issued a report and recommendation on the merits of the habeas petition (the "second R&R"),[15] recommending to the District

---

[15]Each of the magistrate judge's reports and recommendations (both of which were issued after the evidentiary hearing held on November 3, 2011) contained a "Statement of Facts and of the Case." These two statements of facts are substantively identical, with very limited variations in wording or grammar in a few places.

Court that it grant the petition and that Ross "be granted narrow relief in the form of reinstatement of his direct appeal rights in state court, a direct appeal denied Ross through the inaction of his first state post-conviction counsel." Id. at 78. The second R&R noted that the record demonstrated that Ross "diligently sought to pursue a direct appeal for years, only to be frustrated in those efforts by his own counsel." Id. at 75. Thus, though the findings were not comprehensively set forth with respect to the 2004-2008 period, it is evident that the magistrate judge and, accordingly, the District Court, believed that Sheffield had ignored Ross's correspondence, refused his phone calls, did not take the necessary steps to preserve Ross's appellate rights even when Ross prompted him to do so, and made misleading statements and gave false assurances to Ross regarding the status of the appeal.[16] The District Court found that the facts in this case were extraordinary, particularly when considered in light of Ross's limited intelligence and education, his status as an incarcerated prisoner,[17] and the Common Pleas Court's denial

[16]In fact in his first R&R the magistrate judge pointed out that, although Ross's documentation supporting his diligence "became . . . sparse from 2004 through 2008, Ross testified without contradiction, that he continued to try to pursue his appeals during these years and some documentation supports this testimony." J.A. at 46 n.6. We are uncertain as to what this documentation was as it does not seem to be in the record. In any event, we are deciding this case on the basis of our belief that there is no such documentation.

[17]The difficulties of this status included having limited financial and other resources with which to pursue an appeal,

19

of his motion for the appointment of a new attorney to replace Sheffield. The order denying Ross's motion for the appointment of a new attorney was particularly significant because it recited that Ross's attorney had sought and obtained an order allowing him to appeal nunc pro tunc, thus implying that Sheffield was prosecuting the appeal, a statement on which Ross relied.

On March 16, 2012, the District Court issued an order adopting the second R&R, thus granting Ross's habeas petition, and ordered the Commonwealth to reinstate Ross's direct appellate rights within 90 days. The Commonwealth has filed a timely appeal from that order which, though recited to be only from the March 16, 2012 order, includes an appeal from the order of December 29, 2011, denying the Commonwealth's motion to dismiss.[18]

---

as well as problems caused by being moved within correctional facilities, resulting, as we have noted, in a loss of his personal records.

[18]Under the "merger rule" because notices of appeal are construed liberally and a case ordinarily may not be appealed until a final judgment has been entered, even if the notice of appeal recites that the appeal is from the final order of the district court without mentioning any other order, interlocutory orders that are interdependent upon or necessary to the disposition in the final order usually are considered by a court of appeals as having been appealed. See In re Westinghouse Sec. Litig., 90 F.3d 696, 706 (3d Cir. 1996). This case is a classic case for the application of the merger

## III. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, because this appeal is from a final decision of the District Court, and pursuant to 28 U.S.C. § 2253, because this appeal is from the District Court's final order in a 28 U.S.C. § 2254 habeas corpus proceeding. We review a district court's factual findings on a clear error standard, Rolan v. Vaughn, 445 F.3d 671, 677 (3d Cir. 2006), Love v. Morton, 112 F.3d 131, 137 (3d Cir. 1997);[19] but when the facts are determined by a district court, we review the application of the equitable principles implicated on the appeal on a de novo standard, Munchinski v. Wilson, 694 F.3d 308, 329 (3d Cir. 2012) ("'[A] District Court's decision on the question of whether a case is sufficiently 'extraordinary' to justify equitable tolling should be reviewed de novo.'") (quoting Brinson v. Vaughn, 398 F.3d 225, 231 (3d Cir. 2005); Taylor v. Horn, 504 F.3d 416, 427 (3d

---

rule as both of the District Court orders "produced the judgment." Id.

[19]But see Rolan, 445 F.3d at 680-81 (A district court's findings of fact following an evidentiary hearing should not be disturbed absent clear error except where district court held a superfluous evidentiary hearing when there were legitimate and sufficient state court findings of fact in the record on the issue in question).

21

Cir. 2007)).[20]

In applying the clear error standard of review, a reviewing court should "not disturb [a finding of a district court] unless it is wholly unsupported by the evidence." United States v. Hoffecker, 530 F.3d 137, 183 (3d Cir. 2008). Moreover, in making that review an appellate court ordinarily accepts a district court's credibility determinations. See United States v. Marcavage, 609 F.3d 264, 281 (3d Cir. 2010).

## IV.  ANALYSIS

On this appeal we consider two narrow issues, the first issue being in two parts:

1.  Did the District Court clearly err when, after an evidentiary hearing, it made a factual determination that Ross attempted to prosecute a direct appeal for many years, including the period from 2004 to 2008, even though the record does not

---

[20]As we noted in Munchinski, and contrary to the Commonwealth's assertion, we did not adopt the standard of de novo review of a grant of equitable tolling where the facts are not in dispute in Brinson, 398 F.3d at 231, but rather only suggested that de novo review was probably appropriate in that circumstance as it was not necessary to reach that issue in that case.  See Munchinski, 694 F.3d at 329 n.17.  Taylor later implicitly adopted the de novo standard.  504 F.3d at 427 n.6.

contain documentation to support the finding with respect to that four-year period? In adjudicating this issue we consider Ross's testimony that he had made calls to Sheffield and had sent him correspondence during the 2004-2008 period and we also consider Sheffield's testimony that his office often did not accept inmates' calls, at least when he was not available, he did not remember much regarding Ross's attempts to contact him, and he may have lost documents during an office move. Then, if we accept the District Court's factual findings with respect to Ross's efforts to prosecute his appeal, as we do, we decide whether Ross's efforts satisfied the reasonable diligence prong of the showing needed to obtain equitable tolling of the statute of limitations. In making the determination with respect to the sufficiency of Ross's diligence, it does not matter whether we exercise a de novo or a deferential fact finding standard of review because our result is the same under both tests.

2. If we conclude that the District Court's factual findings in this case demonstrate that Ross acted with reasonable diligence, then exercising de novo review, we must determine whether extraordinary circumstances warranted equitable tolling of the statute of limitations. In answering this question we consider that the record shows that (a) Ross regularly contacted Sheffield regarding his appeal, but Sheffield misled and lied to him, ignored his correspondence, refused his phone calls, and consulted with him in person only once during the eight years that he was Ross's attorney of record; (b) Ross has a history of mental illness; (c) Ross has limited cognitive abilities and education; (d) Ross is incarcerated and during the period of time in question was moved within the prison system, resulting in a loss of personal effects, including documents; (e) Ross

23

unsuccessfully requested the Common Pleas Court to appoint a new attorney for him; and, (f) in that denial, the court implied that Sheffield was taking steps to prosecute Ross's appeal, a suggestion that later turned out to be incorrect.

The Commonwealth argues that the District Court erred in granting equitable tolling because Ross did not diligently pursue his case between February 2004 and April 15, 2008, when he wrote the clerk of the Common Pleas Court requesting information regarding the status of his appeal, and, therefore, Ross did not satisfy the "reasonable diligence" test required for equitable tolling. Appellant's br. at 15.[21] The Commonwealth more specifically alleges that this lack of diligence is evident because: (1) Ross did not file any complaint about Sheffield with the Pennsylvania attorney disciplinary authorities; (2) other than his first motion to have Sheffield removed in January 2001, Ross did not file a motion to have Sheffield removed; (3) Ross

---

[21]The Commonwealth acknowledges in its brief that Ross demonstrated that certain of the requirements for equitable tolling were met for it recites that: "Under the circumstances of this case, the Commonwealth does not dispute the extraordinary circumstances that appellee faced (namely, abandonment by appellate counsel Christopher Sheffield), but avers that the record establishes that appellee failed to exercise reasonable diligence. . . . [P]etitioner admittedly displayed diligence in keeping abreast of his case between 2001 and 2004." Appellant's br. at 17.

24

was aware that he could seek relief under the PCRA at least as early as June 14, 2003, yet he did not file his pro se PCRA petition until 2008; and (4) Ross's letter of January 7, 2003, threatening to seek help by writing the federal courts indicates that Ross knew as early as 2003 that he had the right to pursue federal relief. Appellant's br. at 20-22.

Ross counters that the District Court credited his testimony at the hearing before the magistrate judge to the end that he regularly telephoned Sheffield and sent correspondence to him between 2004 and 2008, and argues that we should accept this factual determination, as it was not clearly erroneous. Ross also contends that we should accept the District Court's conclusions that he was reasonably diligent in attempting to pursue his appeal, and that the circumstances he faced were extraordinary so that equitable tolling of the running of the statute of limitations was warranted.

A person in custody pursuant to a judgment of a state court may apply for a writ of habeas corpus in a district court on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States, provided that he has exhausted the remedies available in the state courts, a state corrective process is not available, or there are circumstances that render the process to protect his rights ineffective. 28 U.S.C. § 2254(a)-(b). Ross has claimed that his trial counsel rendered ineffective assistance and that his appellate counsel, Sheffield, abandoned him during the proceedings on his state court appeal, and thus his rights under the Sixth Amendment

25

were violated.[22]

The Supreme Court "has recognized that the right to counsel is the right to the effective assistance of counsel. Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense. Counsel, however, can also deprive a defendant of the right to effective assistance, simply by failing to render adequate legal assistance." Strickland v. Washington, 466 U.S. 668, 685-86, 104 S.Ct. 2052, 2063-64 (1984) (internal quotation marks and citations omitted) (citing and quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 1449 n.14 (1970), and Cuyler v. Sullivan, 446 U.S. 335, 344-50, 100 S.Ct. 1708, 1716–19 (1980)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686, 104 S.Ct. at 2064.

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that but for counsel's errors the result of the underlying proceeding would have been different. Id. at 687-88, 104 S.Ct. at 2064. The

---

[22]Of course, we do not address the question of whether his trial counsel had been ineffective inasmuch as in these habeas corpus proceedings we are concerned only with the question of whether Ross can pursue a direct appeal from his conviction.

26

Supreme Court has held that "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Roe v. Flores-Ortega, 528 U.S. 470, 484, 120 S.Ct. 1029, 1039 (2000). The defendant has the right to take this appeal because the "denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right . . . demands a presumption of prejudice. Put simply, we cannot accord any 'presumption of reliability' to judicial proceedings that never took place." Id. at 483, 120 S.Ct. at 1038 (citing Smith v. Robbins, 528 U.S. 259, 286, 120 S.Ct. 746, 764-65 (2000)).

### A. Statute of limitations for filing a habeas corpus petition

The AEDPA imposes a one-year limitation period for a state prisoner to file a federal habeas corpus petition which ordinarily starts to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[23] However, in Holland v. Florida, the Supreme

---

[23]We need not discuss the circumstances in which the one-year period runs from a date later than the date on which a judgment has become final inasmuch as Ross acknowledges that the only basis on which his habeas petition could have been timely is through the application of equitable tolling of the running of the statute of limitations and the parties have briefed the case addressing only that point. We do not decide

Court, confirming the construction of the AEDPA by 11 courts of appeals, found that the AEDPA's one-year limitation period is subject to equitable tolling in appropriate cases. 130 S.Ct. 2549, 2554, 2560 (2010).[24]

### B. Establishing that equitable tolling is warranted

As summarized by the Supreme Court, "[g]enerally, a litigant seeking equitable tolling [of the AEDPA's one-year statute of limitations] bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 1814 (2005) (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 457-58 (1990)); see also Holland, 130 S.Ct. at 2562; Jenkins v. Superintendent of Laurel Highlands, 705

---

a case by allowing equitable tolling if the habeas petition was timely by reason of statutory tolling. See Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80, 88 (3d Cir. 2013).

[24]In reaching this conclusion, the Supreme Court reasoned that the AEDPA's statute of limitations defense is not jurisdictional, inflexibly requiring dismissal when the one-year clock has run, and that a non-jurisdictional federal statute of limitations is normally subject to a rebuttable presumption in favor of equitable tolling. It further noted that equitable principles traditionally have governed the substantive law in habeas corpus proceedings. Holland, 130 S.Ct. at 2560-62.

F.3d 80, 89 (3d Cir. 2013); Pabon v. Mahanoy, 654 F.3d 385, 399 (3d Cir. 2011).

As with most issues involving a court's exercise of equitable powers, "[t]here are no bright lines in determining whether equitable tolling is warranted in a given case." Pabon, 654 F.3d at 399. In Holland, however, the Supreme Court emphasized that in considering whether there could be equitable tolling, courts should favor flexibility over adherence to mechanical rules. 130 S.Ct. at 2563. In this regard, "the particular circumstances of each petitioner must be taken into account," Pabon, 654 F.3d at 399, and each decision made on a "case-by-case basis." Holland, 130 S.Ct. at 2563 (quoting Baggett v. Bullitt, 377 U.S. 360, 375, 84 S.Ct. 1316, 1324 (1964)). Thus, we must "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." Holland, 130 S.Ct. at 2563. We have held that equitable tolling is appropriate when principles of equity would make the rigid application of a limitation period unfair, but that a court should be sparing in its use of the doctrine. Pabon, 654 F.3d at 399; Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).[25]

---

[25]See also LaCava v. Kyler, 398 F.3d 271, 275 (3d Cir. 2005) (A court should apply equitable tolling "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice." (alteration in original)); Robinson v. Johnson, 313 F.3d 128, 142 (3d Cir. 2002) ("[W]e have cautioned that a statute of limitations should be

29

1. The reasonable diligence prong of an equitable tolling showing

The diligence required for equitable tolling purposes is reasonable diligence, not maximum, extreme, or exceptional diligence. Holland, 130 S.Ct. at 2565.[26] "This obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well." LaCava v. Kyler, 398 F.3d 271, 277 (3d Cir. 2005) (citing Jones, 190 F.3d at 160). A determination of whether a petitioner has exercised reasonable diligence is made under a subjective test: it must be considered

tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." (quoting Jones, 195 F.3d at 159) (internal quotation marks omitted)).

[26]See also Baldayaque v. United States, 338 F.3d 145, 153 (2d Cir. 2003) ("The standard is not 'extreme diligence' or 'exceptional diligence,' it is reasonable diligence. On remand, the district court should ask: did the petitioner act as diligently as reasonably could have been expected under the circumstances?") (emphasis in original); see also Pace, 544 U.S. at 419, 125 S.Ct. at 1815 ("Under long-established principles, petitioner's lack of diligence precludes equity's operation.") (citing Irwin, 498 U.S. at 96, 111 S.Ct. at 457-58, and McQuiddy v. Ware, 87 U.S. 14, 20 Wall. 14, 19, 22 L.Ed. 311 (1873) ("Equity always refuses to interfere where there has been gross laches in the prosecution of rights." (internal citations omitted)).

in light of the particular circumstances of the case. See Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004) ("Due diligence does not require the maximum feasible diligence, but it does require diligence in the circumstances.") (emphasis added) (internal quotation marks and citation omitted); see also Doe v. Busby, 661 F.3d 1001, 1013 (9th Cir. 2011) ("To determine if a petitioner has been diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution in light of his or her particular circumstances." (emphasis added)).

The fact that a petitioner is proceeding pro se does not insulate him from the "reasonable diligence" inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling. See Brown v. Shannon, 322 F.3d 768, 774 (3d Cir. 2003) (equitable tolling not justified where petitioner had one month left in limitations period in which he could have "fil[ed] at least a basic pro se habeas petition" at the time that petitioner's attorney informed him that he would not file an appeal in state court on his behalf and could no longer adequately represent him); see also Doe v. Menefee, 391 F.3d 147, 177 (2d Cir. 2004) ("Given that we expect pro se petitioners to know when the limitations period expires . . . such inadvertence on Doe's part cannot constitute reasonable diligence.").

2. The extraordinary circumstances
prong of an equitable tolling showing

We have recognized that in some cases an attorney's malfeasance, when combined with reasonable diligence on the

31

part of the petitioner in pursuit of his rights, may warrant equitable tolling of the statute of limitations. Schlueter, 384 F.3d at 76-77 (citing Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999)); see also Nara v. Frank, 264 F.3d 310, 320-21 (3d Cir. 2001), abrogated on other grounds by Carey v. Soffold, 536 U.S. 214, 122 S.Ct. 2134 (2002) (denial by district court of habeas petition was vacated, with the direction that an evidentiary hearing be held on whether the circumstances of attorney negligence warranted equitable tolling under the AEDPA).

In 2010, the Supreme Court adopted this principle in Holland when it granted equitable tolling based on egregious attorney neglect amounting to extraordinary circumstances. In Holland, the petitioner repeatedly had urged his attorney to take action on his appeal, and in his communications had provided instructions on the importance of filing a timely habeas corpus petition. Nevertheless, the attorney ignored most of his communications, misstated the law in the few communications he did send the petitioner, and did not take the necessary steps to forward his client's appeal or preserve his client's right to appeal; moreover, the state courts denied the petitioner's attempts to have new counsel assigned. Holland, 130 S.Ct. at 2555-56.

### 3. The findings of historical fact in this case

The findings of fact that the magistrate judge outlined in his reports and recommendations that the District Court subsequently adopted were predicated on the evidence developed at the evidentiary hearing held before the magistrate

judge on November 3, 2011, and the state courts' records. As we have indicated, such findings are subject to a deferential clear error review. See Leeper v. United States, 756 F.2d 300, 308 (3d Cir. 1985) ("The standard of review of factual findings does not envision an appellate court substituting its findings for that of the district court; rather it allows only an assessment of whether there is enough evidence on record to support such findings, regardless of whether different inferences could be drawn.").

After the evidentiary hearing to resolve factual issues held on November 3, 2011, the District Court made a factual determination that between the years 2004 and 2008, Ross had continued to pursue his appeal as he testified. Although copies of correspondence and records of phone calls for the 2004-2008 time period were not available, probably because of Ross's status as a prisoner and his moves within the prison system, the District Court concluded that Ross's testimony was credible. We cannot disturb that conclusion inasmuch as Sheffield testified that he did not remember certain events material to Ross's efforts and did not remember his own office's procedures. Furthermore, Sheffield confirmed that his office sometimes refused to take inmate/client phone calls, and that he may have lost records during an office move and/or switching of computers. Moreover, Sheffield was unable to answer questions concerning the appeals process from criminal convictions in Pennsylvania.

The District Court's conclusions included factual findings that Sheffield's actions were confusing even to the Common Pleas Court causing it to offer (what turned out to be)

33

misleading information to Ross with respect to the status of his appeal that implied that it was being prosecuted, and that Sheffield's words and actions were artful and disingenuous throughout his representation of Ross. Thus, in January 2001, about six months after the court assigned Sheffield to represent him, Ross requested the court to appoint new counsel for him but the court denied his application, explaining in its order that Sheffield had filed a motion to be permitted to file an appeal nunc pro tunc which the court had granted. This information suggested to Ross that Sheffield was pursuing Ross's appeal diligently. As a consequence of the court's action Ross felt chastened enough to write a letter apologizing to Sheffield.

About five months later, on May 9, 2001, after a phone call from the court administrator, Sheffield explained in a letter to the state court that he had been waiting for the trial transcript, and that, although he admittedly had received that transcript, he was "not sure of the precise date that the Court Reporter placed the transcripts in my courthouse box." J.A. at 272. Yet, the docket in the Common Pleas Court reveals that the transcript had been "lodged and filed" over a month earlier, on April 3, 2001, and that when the court on December 13, 2000, ordered it filed, it also had ordered that an appeal nunc pro tunc "be filed no later than 30 days following the Defense counsel's receipt of the afore ordered trial transcripts." Id. at 266. Sheffield in his letter of May 9, 2001, in explaining his tardiness, concluded that "[w]hile [he was] not yet ready to specifically itemize each appellate issue, [he would] file the Notice of Appeal immediately," which, as stated above, he did that same day. Id. at 272. Despite this prodding by the court, almost another full month passed before Sheffield on June 8, 2001, visited Ross in

34

prison for the first and only time during the approximately eight-year period that he was Ross's counsel of record.

Thereafter, according to the findings of the District Court, Sheffield withdrew Ross's appeal (without Ross's knowledge) with the intended strategy of filing post-trial motions under the PCRA. But Sheffield never filed another appeal or a collateral post-conviction petition on Ross's behalf. Inasmuch as the state court had granted Ross 30 days to file post-conviction motions from the date that the Superior Court allowed the withdrawal of his appeal which turned out to be September 4, 2001, the final date by which Sheffield should have filed a post-conviction motion was October 4, 2001. Sheffield, however, did not file any such motion. In analyzing these facts for the purposes of assessing Ross's diligence and determining whether there were extraordinary circumstances in this case, the District Court concluded that "[t]he record of that state court representation is marked by a pattern of diligent efforts by Ross, a man of limited abilities, to preserve his appellate rights in the face of complete inaction by his counsel." Id. at 53.

Thus, the District Court made the historical factual determinations, after a hearing, that Ross regularly and repeatedly had attempted to pursue his appeal through letters and phone calls to his attorney and to the courts, and that he attempted to pursue his appeal during the time period between 2004 and 2008. In reviewing these factual determinations for clear error, we find none.[27] As we noted in Leeper v. United

---

[27]The only circumstance that gives us pause in upholding the

35

States, "[t]he standard of review of factual findings does not envision an appellate court substituting its findings for that of the district court; rather it allows only an assessment of whether there is enough evidence on record to support such findings, regardless [of] whether different inferences could be drawn." 756 F.2d at 308.

### 4. An evaluation of Ross's diligence

We next turn to the question of whether the facts in the record, as the District Court found them to be, demonstrate that Ross exercised due diligence while exhausting his state remedies. This is the aspect of the District Court's holding that the Commonwealth principally addresses.[28] The District Court

District Court's findings concerning Ross's diligence between 2004 and 2008 in corresponding with Sheffield is that Ross's correspondence prior to that period was available even though the 2004-2008 correspondence was missing. Our point is that it might be expected that if copies of the older correspondence were not lost, copies of the more recent correspondence would not have been lost. Nevertheless, our concerns over this point are not sufficient to cause us to reject the District Court's findings with respect to Ross's diligence between 2004 and 2008.

[28]The Commonwealth indicates that "[t]here is no explanation why appellee chose to file his pro se PCRA in 2008 instead of earlier in 2004 (or in 2005, 2006, or 2007, for that matter). It is equally unclear why appellee delayed in filing his Petition for Writ of Habeas Corpus until May 2, 2011. . . . Between

found that, despite the impediments he faced, Ross was duly diligent in his efforts to pursue his appeal but that he was misled as to the status of the appeal by Sheffield and by the Common Pleas Court's refusal to replace his attorney and its accompanying explanation that his attorney had obtained an order allowing Ross to appeal nunc pro tunc. As stated above, the reasonable diligence showing that a petitioner must make to obtain equitable relief from the AEDPA statute of limitations is less than a showing of extraordinary diligence. Even in a de novo review after having accepted the District Court's findings of fact, we conclude that Ross did exercise reasonable diligence in the circumstances that he faced. We cannot, as the Commonwealth seems to suggest, expect Herculean efforts on the part of a lay person who is a convicted and incarcerated prisoner of limited cognitive abilities, and whose every attempt to pursue his appeal has been thwarted. In the circumstances that he faced, Ross demonstrated perseverance and diligence.

5. An evaluation of the circumstances that Ross faced

Finally we consider whether or not the circumstances that Ross faced were "extraordinary" such that the second prong of the showing necessary to support equitable tolling has been met.

---

2004 and 2008, a substantial period of time, appellee appears to have done none of these things, all of which could have been accomplished merely by writing a letter. . . . Based upon this record, appellee did not exercise reasonable diligence in bringing his claim." Appellant's br. at 21-22.

37

A court measures the extraordinary circumstances prong subjectively. In analyzing whether the circumstances Ross faced were extraordinary, "the proper inquiry is <u>not how unusual the circumstance</u> alleged to warrant tolling is among the universe of prisoners, . . . <u>but rather how severe an obstacle it is for the prisoner</u> endeavoring to comply with AEDPA's limitations period." <u>Pabon</u>, 654 F.3d at 400 (internal citations omitted) (emphasis in original).

In addition, for a petitioner to obtain relief there must be a causal connection, or nexus, between the extraordinary circumstances he faced and the petitioner's failure to file a timely federal petition. <u>See</u> <u>Nara</u>, 264 F.3d at 320 (The alleged extraordinary circumstance "must somehow have affected the petitioner's ability to file a timely habeas petition."); <u>see also</u> <u>Holland</u>, 130 S.Ct. at 2562 (A petitioner must show that "some extraordinary circumstance <u>stood in his way and prevented timely filing</u>." (emphasis added and internal quotation marks omitted)).[29]

---

[29]<u>See</u> <u>also</u> <u>Harper v. Ercole</u>, 648 F.3d 132, 137 (2d Cir. 2011) ("To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline."); <u>Spitsyn v. Moore</u>, 345 F.3d 796, 799 (9th Cir. 2003) ("The prisoner must show that the extraordinary circumstances were the cause of his untimeliness." (internal quotation marks omitted)); <u>Valverde v. Stinson</u>, 224 F.3d 129, 134 (2d Cir. 2000) ("The word 'prevent' requires the petitioner to demonstrate a causal

In this case, the District Court found that Ross's efforts were stymied by Sheffield's misleading statements on matters that should have been within Sheffield's knowledge, the Common Pleas Court's no doubt unintentionally misleading statement implying that Sheffield was prosecuting Ross's appeal, Sheffield's unresponsiveness and neglect of the case, and Ross's limited abilities. The totality of these circumstances makes it clear that Ross satisfied the second prong of the showing required to justify equitable tolling of the running of the habeas corpus statute of limitations, i.e., that extraordinary circumstances stood in the way of Ross filing his direct appeal to the Superior Court.

Our result is buttressed when we consider the record as a whole so far as it is germane to the circumstances that Ross faced. We reiterate that Ross has a limited intellectual ability and education, a history of poor mental health, and is an incarcerated prisoner with limited resources at his disposal who was moved among facilities within the prison system. These fundamental disadvantages were exacerbated by Sheffield's extreme neglect, including but not limited to his refusal to accept Ross's calls,[30] overall failure to communicate with Ross,

relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.").

[30]We are not suggesting that an attorney always needs to accept his client's telephone calls. Rather, we are indicating

inaccurate assurances regarding the status of Ross's appeal on those very limited occasions when he did communicate with Ross, and misstatements of the law. In addition, the record reflects that Ross made an attempt to have the Common Pleas Court assign a new attorney to his case by filing a motion on January 5, 2001, asking for that relief, but that the court denied his motion in an order that implied that the court believed, albeit incorrectly, that Sheffield was moving Ross's case forward.

Furthermore, it is a matter of great significance that shortly after the Common Pleas Court denied Ross's motion to replace Sheffield as Ross's attorney, Sheffield, without Ross's consent or even knowledge, reversed the very steps that he had taken on Ross's behalf and failed to pursue Ross's appeal through other means, all the while as Ross continued to make phone calls and write asking for updates on his case. Overall, it is clear that the circumstances that Ross faced were quite extraordinary and, indeed, were similar to those the petitioner faced in <u>Holland</u> where his attorney's extreme neglect constituted extraordinary circumstances warranting the granting of equitable tolling. <u>Holland</u>, 130 S.Ct. at 2564.

Further, the nexus test is met because the extraordinary

that Sheffield's office's repeated refusal to take Ross's calls, though perhaps sometimes justified by the circumstance that Sheffield was not in his office, in the circumstances of this case is another factor for us to consider in reviewing Sheffield's conduct to the extent that it relates to the extraordinary circumstances that Ross faced.

40

circumstances that Ross faced directly prevented him from timely pursuing his state court remedies and filing a statutorily timely habeas petition. Therefore, it is appropriate in this case to equitably toll the running of the AEDPA's one-year statutory limitation period and to grant Ross substantive relief so that he can prosecute an appeal from his conviction and sentence in the state courts.

## V.  CONCLUSION

The District Court did not make a clear error following the evidentiary hearing of November 3, 2011, in its findings with respect to the efforts that Ross made in his attempt to prosecute his appeal, including those efforts in the period between 2004 and 2008. Based on those findings and the record in this case, we are satisfied that, exercising either a deferential or de novo standard of review, Ross was duly diligent in prosecuting his appeal. Sheffield, however, ignored Ross's efforts or misled him as to the status of his appeal. Further, after conducting a de novo review, we agree with the District Court's legal conclusion that Ross faced such extraordinary circumstances that equitable tolling is warranted. We therefore will affirm the District Court's orders granting equitable tolling of the statute of limitations and substantive habeas corpus relief, but we will instruct it to modify its order to the state court to reinstate Ross's appeal, and, instead, to order his release within 90 days unless the Commonwealth of Pennsylvania reinstates

41

his appeal.[31]  We direct the Court to make this modification because principles of comity and jurisdiction prohibit a district court from ordering the reinstatement of a state court appeal: "[A] district court's power to grant a writ of habeas corpus under 28 U.S.C. § 2254 is limited on this record to directing [the prisoner's] release from custody if the state fails to correct the constitutional violation."  Barry v. Brower, 864 F.2d 294, 296 (3d Cir. 1988).  Finally, we direct the Clerk of our Court to send a copy of this opinion to the Attorney Disciplinary Board of the Supreme Court of Pennsylvania.

---

[31]We recognize, however, that in this case the distinction between ordering a state court to take certain steps and ordering that a prisoner be released if it does not take those steps is immaterial because we have been informed that the Common Pleas Court has entered an order restoring Ross's appellate rights and Ross has appealed to the Superior Court, though the state courts have stayed proceedings on the appeal pending disposition of this appeal.