**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1896
_____

DAMIEN M. SCHLAGER,

Appellant

v.

SUPERINTENDENT FAYETTE SCI;
ATTORNEY GENERAL OF THE COMMONWEALTH OF PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-14-cv-01964)
District Judge: Hon. Robert D. Mariani

_____

Submitted Under Third Circuit LAR 34.1(a)
September 17, 2019

Before: KRAUSE, MATEY, and RENDELL, *Circuit Judges.*

(Opinion Filed:  October 7, 2019)

_____

OPINION*

_____

_____

    * This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Damien Schlager appeals the order of the District Court dismissing his habeas corpus petition as untimely. We granted a certificate of appealability to decide whether equitable tolling should apply. Finding that the requirements are satisfied, we will reverse.

I.

Schlager was convicted of the murder of his girlfriend, and the murder of her unborn child. He was sentenced to two consecutive terms of life imprisonment. The judgment became final on April 20, 2009, when the U.S. Supreme Court denied his petition for writ of certiorari, although Schlager's counsel did not inform him of this until nearly three months later. *See Schlager v. Pennsylvania*, 556 U.S. 1194 (2009) (Mem.); 28 U.S.C. § 2244(d)(1). Schlager petitioned for postconviction relief on November 10, 2009, 204 days after his petition for certiorari was denied. The petition was denied by both the Commonwealth trial and appeals courts. Schlager's counsel then filed a belated petition, which the Pennsylvania Supreme Court denied as untimely on November 25, 2013.

But counsel did not inform Schlager the petition was denied, and so Schlager believed that his appeal remained pending. Wondering where things stood, Schlager contacted the court clerk on September 3, 2014. The clerk replied on September 12, 2014, stating that Schlager's appeal had been denied as untimely nearly ten months earlier. Schlager quickly filed a *pro se* petition for untimely appeal *nunc pro tunc*, which the Pennsylvania Supreme Court denied, and he filed his § 2254 petition eighteen days later.

2

So the clock on Schlager's federal habeas petition began ticking again on November 22, 2013, the day after his time to appeal to the Pennsylvania Supreme Court expired, and it continued to run for 313 days until he filed his § 2254 petition on September 30, 2014. Adding this period to the 204 days before he filed his Commonwealth postconviction petition, 517 days passed before Schlager filed his federal habeas petition. That makes his present petition 152 days late.

The District Court dismissed the petition as untimely, declining to apply equitable tolling. Schlager timely appealed, and we granted a certificate of appealability on the sole issue of whether equitable tolling should apply to save Schlager's petition. The District Court had jurisdiction over Schlager's habeas petition under 28 U.S.C. §§ 2241 and 2254, and we have jurisdiction over Schlager's appeal under 28 U.S.C. §§ 1291 and 2253. We review the District Court's decision on tolling the limitations in the Antiterrorism and Effective Death Penalty Act (AEDPA) de novo, *Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 84 (3d Cir. 2013), but review the District Court's factual findings for clear error, *Ross v. Varano*, 712 F.3d 784, 795 (3d Cir. 2013).

## II.

Schlager does not dispute that his petition is late. AEDPA imposes a one-year limitation period for a state prisoner to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). But because the requirement is not jurisdictional, this period is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). "We extend the remedy of equitable tolling only sparingly, when principles of equity would make the rigid application of a limitation period unfair." *Jenkins*, 705 F.3d at 89 (citations and internal

3

quotation marks omitted). "[A] garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Holland*, 560 U.S. at 651–52 (citations and internal quotation marks omitted). To benefit from tolling, a prisoner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Jenkins*, 705 F.3d at 89 (quoting *Holland*, 560 U.S. at 649). One potentially extraordinary circumstance is where a prisoner is "effectively abandoned" by his attorney. *Jenkins*, 705 F.3d at 89 (citation omitted).

Schlager seeks to toll two separate periods: his untimely direct appeal and his delinquent postconviction petition. We examine both, finding no ground to toll the former, but attorney abandonment tolling the latter.

## A. Direct Appeal Period

Schlager seeks to toll the period between April 20, 2009, the day the Supreme Court denied his petition for certiorari, and July 15, 2009, the day he received a letter from his counsel informing him of the denial, arguing that he was effectively abandoned. The Commonwealth contends that counsel's 86-day silence is merely garden-variety delay. We agree. Even if Schlager's counsel were negligent, there was still sufficient time at that point for Schlager to timely petition. Nor is there any indication that Schlager's counsel affirmatively misled him. While surely not optimal, counsel's failure to notify Schlager does not amount to "extraordinary circumstances" entitling him to equitable tolling. *Holland*, 560 U.S. at 649, 652–53.

4

B. Postconviction Period

The ten-month delay from November 21, 2013, the day that Schlager's Commonwealth habeas petition became final, to September 15, 2014, when the Pennsylvania Supreme Court informed him that it had dismissed his petition as untimely, stands in a different light. The Commonwealth admits that Schlager's postconviction counsel effectively abandoned him, but still contends that tolling is not warranted. Rather, the Commonwealth argues that Schlager did not diligently pursue his rights. We cannot agree.

1. Extraordinary Circumstances

The District Court credited Schlager's statement that he had an effective working relationship with his postconviction counsel and described counsel as "outstanding." (App. 17 (citing App. 567).) Even so, the record reflects that counsel didn't merely neglect Schlager for nearly ten months, he actively misled Schlager about the status of his appeal. Schlager asserted—and his father signed a statement affirming—that he and his father repeatedly called counsel's office, wrote letters, and tried to make appointments to no avail. Instead, counsel's employees and partner told Schlager that they had received no word from the court and would advise him when they did. It was not until Schlager wrote a letter to the Office of the Prothonotary for the Pennsylvania Supreme Court asking about the status of his appeal that he learned it had been dismissed as untimely ten months before. While the District Court noted that Schlager's postconviction counsel did not petition to appeal *nunc pro tunc* the Superior Court's decision because he believed that the petition lacked merit, this does not justify failing to inform Schlager that his

5

appeal had been dismissed and misleadingly representing that it remained pending.

This was more than "garden variety" error or "excusable neglect." *Holland*, 560 U.S. at 652. Where, as here, a client is "stymied by [an attorney's] misleading statements on matters that should have been within [the attorney's] knowledge" and by the attorney's "unresponsiveness and neglect of the case," then "extraordinary circumstances stood in the way of" the client's ability to file. *Ross*, 712 F.3d at 803. Schlager has established that he was effectively abandoned by his counsel.

### 2. Reasonable Diligence

The District Court also declined to apply equitable tolling to the postconviction period because it found that Schlager failed to show that he was reasonably pursuing his rights. But its reasoning stems from the erroneous finding that Schlager was not affirmatively misled into believing that his appeal was still pending. The District Court found that Schlager did not file his *pro se* petition to appeal *nunc pro tunc* "until September 2014, nearly one year after [postconviction] counsel informed him that the Superior Court affirmed the denial of his [Commonwealth postconviction] petition," and that he "did not file his habeas petition with [the District Court] until September 2014." (App. 18.) True enough, but Schlager waited because his attorney told him that he had filed an appeal with the Pennsylvania Supreme Court, that his appeal remained pending, and that he would advise Schlager when the appeal was resolved.[1]

---

[1] For these same reasons, the District Court's suggestion that Schlager should have "protectively" filed his habeas petition is incorrect. We have held that a petitioner might protectively file where there is reasonable confusion about the timeliness of his filing. *See*

6

The Commonwealth argues that Schlager was not diligent in pursuing his petition because, despite counsel's assertions, Schlager's father should have monitored the case online. It points to several places in the record showing that Schlager's father had checked the online docket to monitor the status of Schlager's case in the Court of Common Pleas. That Schlager's father had checked the docket in that court, it contends, means that Schlager could have asked his father to check the status of his appeal in the Pennsylvania Supreme Court online. So the Commonwealth argues Schlager failed to pursue diligently his case through his father.

The District Court and the Commonwealth place too high a burden on Schlager. To be entitled to equitable tolling, a petitioner need only show "reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (citations and internal quotation marks omitted). This requirement "does not demand a showing that the petitioner left no stone unturned." *Munchinski v. Wilson*, 694 F.3d 308, 330 (3d Cir. 2012) (quoting *Ramos–Martinez v. United States*, 638 F.3d 315, 324 (1st Cir. 2011)). "If a petitioner 'did what he reasonably thought was necessary to preserve his rights . . . based on information he received . . . , then he can hardly be faulted for not acting more "diligently" than he did.'" *Id.* at 331 (alterations in original) (quoting *Holmes v. Spencer*, 685 F.3d 51, 65 (1st Cir. 2012)).

Schlager reasonably relied on his counsel's repeated representations that he would notify Schlager when the appeal was resolved. Once Schlager learned that his appeal had

---

*Heleva v. Brooks*, 581 F.3d 187, 191–92 (3d Cir. 2009). But Schlager was not confused; he was actively misled by his counsel's abandonment.

been dismissed, he filed both his petition to file an untimely appeal *nunc pro tunc* and his federal habeas petition within eighteen days. Those facts establish that Schlager diligently pursued his rights.

III.

Were it not for postconviction counsel's abandonment, Schlager's federal habeas petition would have been timely. For this reason, we will reverse the District Court's order and remand for proceedings consistent with this opinion.