

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-7-2005

# Warren v. Kyler

Precedential or Non-Precedential: Precedential

Docket No. 03-2190

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Warren v. Kyler" (2005). *2005 Decisions.* Paper 492.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/492

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-2190
_____

DANIEL K. WARREN, JR.,

Appellant

v.

KENNETH D. KYLER,
THE DISTRICT ATTORNEY OF THE COUNTY OF
LEHIGH,  THE ATTORNEY GENERAL OF THE STATE
OF PENNSYLVANIA,

Appellees

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 02-CV-997)
District Judge: Honorable Marvin Katz

_____

Argued July 11, 2005

Before: ALITO and BECKER, <u>Circuit Judges</u>
and SHADUR,  <u>District Judge</u>[*]

(Filed September 7, 2005 )

Mark Diamond (Argued)
Box 287356
Yorkville Station
New York, NY 10128

<u>Counsel for Appellant</u>

James B. Martin
District Attorney of Lehigh County
Matthew D. Weintraub (Argued)
Chief Deputy District Attorney
David J. Mussel
Assistant District Attorney
455 West Hamilton Street
Allentown, PA 18101-1614

<u>Counsel for Appellee</u>

_____

_____

   * Honorable Milton I. Shadur, United States District Judge
for the Northern District of Illinois, sitting by designation.

OPINION OF THE COURT
_____

SHADUR, <u>District Judge</u>:

Daniel Warren ("Warren") is currently in the State Correctional Institution at Huntingdon, Pennsylvania, serving a prison sentence of 10 to 20 years imposed after he entered a negotiated guilty plea to one count of burglary on October 9, 1998. Warren now claims that the Commonwealth's imposition of that sentence has violated his federal due process rights, and he seeks federal habeas corpus relief under 28 U.S.C. §2254 ("Section 2254") on that basis. Because we conclude that the requirements of Section 2254 have not been met, we affirm the District Court's denial of habeas relief.

<u>Factual and Procedural Background</u>

Under the terms of Warren's plea agreement, other pending charges were dropped and the burglary was treated as a "strike two" offense by the Commonwealth. That latter aspect of the agreement meant that the Pennsylvania mandatory sentencing statute, 42 Pa. Cons. Stat. §9714 ("Section 9714"), was applied during Warren's sentencing. At that time Section 9714(a)(1) provided:

> Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence and has not rebutted the presumption of high

3

> risk dangerous offender...be sentenced to a minimum sentence of ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary.

That "presumption of high risk dangerous offender" applied in Warren's case because the terms of Section 9714(b) were met: He had a prior conviction for a crime of violence that had taken place fewer than seven years before the charged "strike two" offense. To rebut the presumption, Section 9714(c) required Warren to present evidence to the court at a hearing and required the sentencing judge to consider 12 case-specific factors before deciding whether the evidence presented was sufficient. After finding that no evidence presented had overcome the operable presumption against Warren, the sentencing judge imposed the sentence mandated by Section 9714 on December 28, 1998.

Shortly thereafter Warren sought to have the court reconsider the sentence imposed. But that effort was rebuffed on February 5, 1999 because Warren's attorney had initiated a direct appeal to the Superior Court of Pennsylvania. Eleven days later the direct appeal was discontinued by Warren's attorney. Then Warren's later motions seeking to revive his direct appeal by treating his submissions nunc pro tunc were denied, effectively ending any direct review of Warren's sentence.

That chain of events formed the basis for Warren's first petition for post-conviction collateral relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. Cons. Stat. §9541. Warren claimed ineffectiveness of trial counsel because his direct appeal had been discontinued without his consent. After post-conviction counsel was appointed, an evidentiary hearing was conducted by the post-conviction court to assess his claim on June 20, 2000. Shortly

4

after that hearing Warren filed motions claiming ineffectiveness of his post-conviction counsel. On August 21, 2000 the post-conviction court issued a ruling that dismissed both of Warren's ineffectiveness-of-representation claims, and Warren appealed that decision to the Superior Court of Pennsylvania.

After the appeal had been filed, Warren submitted an application to the Superior Court seeking a determination as to whether his waiver of counsel as to that appeal was knowing, intelligent and voluntary. In response the Superior Court remanded the appeal to the post-conviction court for the purpose of conducting a colloquy. On February 20, 2001 the post-conviction court determined that the waiver had been knowing, intelligent and voluntary, so that Warren continued to represent himself on his post-conviction appeal.

In the midst of the just-described waiver proceedings, Warren filed a second post-conviction petition on January 11, 2001. This time he challenged the constitutionality of his sentence in light of the Pennsylvania Supreme Court's invalidation of Section 9714 in Commonwealth v. Butler, 760 A.2d 384 (Pa. 2000). But because that second petition was filed while his original post-conviction appeal was still pending, it was dismissed on January 22, 2001.

On December 14, 2001 the Superior Court disposed of all issues related to Warren's post-conviction challenges. First the court affirmed the finding that Warren's waiver of counsel on the appeal had been knowing, intelligent and voluntary. It also affirmed the rejection of the ineffectiveness claims made in Warren's first post-conviction petition. Finally, the court directly addressed the constitutional claim raised by Warren in his second post-conviction petition and explicitly declined to apply Butler (emphasis in original):

5

It is axiomatic that a new rule of law, even if given full retroactive effect, will not be applied to a <u>collateral proceeding</u> attacking the conviction. <u>Commonwealth v. Tilley</u>, 780 A.2d 649 (Pa. 2001). Instead, for a new rule of law to be applied to a proceeding, the issue had to be preserved at all stages, including on direct appeal. <u>Id.</u>; <u>see also Commonwealth v. Todaro</u>, 701 A.2d 1343 (Pa. 1997)(a new rule of law is not applied in a collateral attack on a conviction).[1] In the present case, Appellant did not raise the constitutionality of the statute during his plea proceedings nor did he raise it during direct appeal. Hence, it cannot be applied in this collateral proceeding.

---

[1] That analysis appears to overstate prior Pennsylvania law, as summarized in <u>Commonwealth v. Gillespie</u>, 516 A.2d 1180, 1183 (Pa. 1986), in one respect:

> Simply stated, a new rule of law to which we give full retroactive effect, will not be applied to any case on collateral review unless that decision was handed down during the pendency of an appellant's direct appeal and the issue was properly preserved there, or, as here, is non-waivable.

Because the Superior Court had found Warren's claim to be non-waivable, there was no need to preserve it "at all stages." But because <u>Butler</u> was not handed down during the pendency of Warren's direct appeal, the rejection of collateral review on that basis was a correct application of the Pennsylvania Supreme Court's teaching.

6

Warren filed a petition for federal habeas corpus relief under Section 2254 on February 12, 2002, raising three objections to the state court proceedings. Two of those objections concerned the state court's refusal to restore his direct right of appeal, and the third challenged the use of Section 9714 in his sentencing. All three objections were rejected, and the writ of habeas corpus was therefore denied, when the District Court adopted the report and recommendations of the magistrate judge on March 11, 2003.

Warren then filed a timely appeal in this court. We granted Warren's application for a certificate of appealability as to two issues: (1) whether the failure to apply Butler retroactively violated Warren's due process rights, and (2) whether the application of Section 9714's burden shifting provision violated Warren's due process rights independently of the ruling on the first issue. Because the District Court's determination was based solely on the information contained in the state court record, our review of those issues is plenary (Marshall v. Hendricks, 307 F.3d 36, 50 (3d Cir. 2002)).

## Federal Habeas Standards

To qualify for relief under Section 2254, Warren must demonstrate that "he is in custody in violation of the Constitution or laws or treaties of the United States" (Section 2254(a)). As already stated, he contends that the state has violated his federal due process rights in either or both of two respects, We address his contentions in turn.

### Retroactivity as a Due Process Issue

As an initial basis for his claim that his due process rights have been violated, Warren attacks the Pennsylvania Superior Court's decision not to apply Butler retroactively. Although that argument raises the issue of retroactivity in the context of habeas review, it is not one of the sort governed by the Supreme Court's standard articulated in Teague v. Lane, 489 U.S. 288 (1989), because we are not asked to decide the applicability of a new federal rule of jurisprudence to an already concluded state proceeding. Instead the issue here is whether the Due Process Clause is implicated when a state court declines to give retroactive effect to one of its own decisions.

We previously addressed a closely related issue in Fiore v. White, 149 F.3d 221 (3d Cir. 1998). After the Pennsylvania Supreme Court had decided Commonwealth v. Scarpone, 634 A.2d 1109 (Pa. 1993), interpreting a state statute, Fiore sought through state post-conviction proceedings to have that ruling applied retroactively to his case. When the state court declined that request, he filed a petition for federal habeas relief.

In reviewing his petition, we first noted that "Fiore is entitled to relief only if federal law requires retroactive application of Scarpone" (Fiore, 149 F.3d at 224). That limitation on the scope of our review stems from the Supreme Court's reemphasis in Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," and it applies with equal force here.

As for the question that we could properly address on habeas review--whether the United States Constitution required the state to apply its decision on a question of state law retroactively--we said this in Fiore, 149 F.3d at 224-25 (some citations omitted):

8

The district court held, and Fiore maintains on appeal, that the Due Process and Equal Protection Clauses of the Fourteenth Amendment require retroactive application of Scarpone. This conclusion, however, is at odds with the Supreme Court's longstanding position that "the federal constitution has no voice upon the subject" of retroactivity. Great Northern Ry. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 364 (1932). While the Court has concluded that some federal criminal decisions should apply retroactively, it has made clear that state courts are under no constitutional obligation to apply their own criminal decisions retroactively. Thus, just as the Supreme Court has fashioned retroactivity rules for the federal courts based on principles of judicial integrity, fairness, and finality, see Teague v. Lane, the state courts are free to adopt their own retroactivity rules after independent consideration of these and other relevant principles.

* * *

Consistent with the Supreme Court's admonition that federal courts not require retroactive application of state judicial decisions, this court has refused to require application of new state decisions in habeas proceedings.

We recognize of course that our decision in Fiore was reversed by the Supreme Court in Fiore v. White, 531 U.S. 225 (2001)(per curiam). But we do not read that outcome to

9

call into question the validity of the retroactivity analysis we expressed there.[2]    Instead the basis for the Supreme Court's reversal in Fiore was a determination that retroactivity principles were not implicated at all.  And that determination stemmed not from any independent review of the state decision, but rather from the Pennsylvania Supreme Court's response to a certified question that characterized its Scarpone decision as a clarification of the statute, not as an announcement of a new rule of law (531 U.S. at 228).

That outcome highlights the fact that it matters whether a state decision has established a new rule of law or merely clarified existing state law.  But important as it may be, we read nothing in Fiore that authorizes us to make that kind of distinction based on our independent analysis of the effect of a state court's decision.  Instead the earlier-identified Estelle v. McGuire principle requires that we heed the state court's application of its own retroactivity principles.

In this instance, the Pennsylvania Superior Court declined to apply Butler retroactively to Warren's post-conviction appeal because it concluded that Pennsylvania retroactivity principles do not give retroactive force to new rules of law in the context of a collateral proceeding.  That means that we are in precisely the same position as in Fiore, and we hold that precisely the same conclusion is appropriate.

Moreover, it should be remembered that Fiore involved a state court's interpretation of a state criminal

---

[2]To be sure, the potential for such an outcome was present based on the Supreme Court's having granted certiorari "to decide when, or whether, the Federal Due Process Clause requires a State to apply a new interpretation of a state criminal statute retroactively to cases on collateral review" (Fiore, 531 U.S. at 226).  But the Supreme Court never reached the merits of that question, and because no decision since then has cast doubt on our analysis, we continue to find our approach persuasive.

statute, while we deal here with a state court's interpretation of the United States Constitution. It does not at all follow that the Supreme Court's certification of such a state law issue to the Pennsylvania Supreme Court in Fiore suggests a like inquiry as to the federal constitutional question that we are called upon to resolve.

In short, Warren's failure to receive the benefit of the Butler decision was based on the Pennsylvania courts' application of their own established retroactivity doctrines. On habeas review we are in no position to second-guess the state courts' determination as to that state law issue. We must rather review for a potential violation of federal law, and because we conclude that nothing in the Constitution requires states to apply their own decisions retroactively, we find no such violation.

Indeed, even if it were to be assumed for the sake of argument that the federal Constitution governs the question whether Butler applies retroactively to a state collateral proceeding, we see no ground for reversal here. Surely the federal Constitution did not require the Pennsylvania Supreme Court to give Butler greater retroactive effect than that decision would have carried if it had been handed down by the United States Supreme Court--and as we explain at the end of the next section of this opinion, a United States Supreme Court holding such as that embodied in Butler would not be applicable retroactively in a federal collateral proceeding.

Clearly Established Constitutional Violation

As an alternative basis for habeas relief, Warren contends that the application of Section 9714's burden shifting provisions at the time of his sentencing was itself a violation of his federal due process rights. For him to succeed on that claim, we must conclude that Warren's sentencing "was

11

contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States" (Section 2254(d)(1)).[3]

Williams v. Taylor, 529 U.S. 362 (2000) interpreted Section 2254(d)(1) to establish two distinct paths that might lead to invalidation of a state conviction on habeas review. We rehearse those two alternatives briefly before analyzing their possible applicability to this case.

First, federal habeas relief is warranted if the state conviction was "contrary to...clearly established Federal law." That applies when a state court's actions are "diametrically different" from or "mutually opposed" to clearly established law, either because the court ignores clear precedent altogether or because it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent" (Williams, 529 U.S. at 406).

Second, federal habeas relief is also appropriate if the state conviction "involves an unreasonable application of...clearly established Federal law." That encompasses cases in which the state court applies the proper Supreme Court precedent to specific facts in an objectively unreasonable way (id. at 409), or where the court unreasonably extends (or unreasonably refuses to extend) a clearly established rule (id.

---

[3]Before we embark on that inquiry, it is important to note the very limited role that the Pennsylvania Supreme Court's Butler decision plays here. Invalidation of Section 9714 on federal due process grounds less than two years after being applied to Warren's case might perhaps indicate a reasonable basis on which to conclude that the provision was inconsistent with constitutional principles, but it does not say much about the much narrower Section 2254 inquiry as to whether its application at Warren's sentencing was objectively unreasonable in light of United States Supreme Court holdings.

at 407).

In either case we must first identify the applicable "clearly established Federal law." In that regard it is clear from the terms of Section 2254(d)(1) that only Supreme Court law is included, and Williams further narrows the field to the holdings as opposed to the dicta of that Court (id. at 412). And we do not consider those holdings as they exist today, but rather as they existed "as of the time of the relevant state-court decision" (id.).

Also relevant is the more difficult question pertaining to the appropriate level of particularity with which to view Supreme Court holdings for purposes of Section 2254 review. In Fischetti v. Johnson, 384 F.3d 140, 148 (3d Cir. 2004) we noted that "if one examines the Supreme Court decisions at a broad level of generality, the universe of state decisions that may be contrary to those decisions will expand." And indeed a broad view might also be expected to increase the rate at which a state court's application of (or failure to apply) Supreme Court holdings would be viewed as unreasonable. But based on our review of Supreme Court jurisprudence, we ultimately concluded that a "fact-specific" and "sharply focused" view of Supreme Court holdings is required for Section 2254 purposes (id. at 148-49).

Given that analytical framework, we cannot conclude that the state court's application of Section 9714's burden-shifting provision at the time of Warren's sentence was an error that satisfies Section 2254's requirements for habeas relief. Warren's argument to the contrary rests on his assertion that the provision violates the general constitutional principle that defendants must be viewed as innocent until proved guilty beyond a reasonable doubt. To that end he cites In re Winship, 397 U.S. 358, 364 (1970). That case--and many others since--establish quite clearly that any presumption against Warren as to an essential factual element of the charged burglary would be unconstitutional and would

13

warrant habeas relief.

But the Section 9714 presumption did not apply to an element of the burglary offense. It applied instead in the context of determining the severity of punishment. And whether the Winship principle applies to that sort of situation has been the subject of significant uncertainty in Supreme Court thought--on that score, compare the discussion in such cases as Mullaney v. Wilbur, 421 U.S. 684, 698 (1975), Patterson v. New York, 432 U.S. 197, 206-11 (1977) and McMillan v. Pennsylvania, 477 U.S. 79, 84-91 (1986) (addressing the differences between those two earlier cases).

McMillan in particular noted that "the extent to which due process forbids the reallocation or reduction of burdens of proof in criminal cases" was an unsettled question (id. at 86), and it expressed an "inability to lay down any 'bright line' test" (id. at 91). Even so, the opinion did provide several guideposts that are relevant to the inquiry here. For example, the Court acknowledged that the Due Process Clause does not permit States to discard the presumption of innocence (id. at 86-87). At the same time, it noted that the prosecution is not relieved of its burden to prove guilt if a sentencing factor "only becomes applicable after a defendant has been duly convicted of the crime for which he is to be punished" (id. at 87). Based on that--as well as a number of other factors that we need not address here in detail[4]--McMillan concluded that

_____

[4]Of course, were we faced with the task of assessing the constitutionality of Section 9714 as a matter of first impression (as we are not), a closer analysis of those other factors--such as the extent to which the sentencing factor alters the range of the sentence, the question whether the sentencing factor triggers a mandatory minimum as opposed to a mandatory maximum, or the likelihood that the sentencing factor could be used by the legislature to evade the requirements of Winship--would be required. In particular, we note that although Mullaney provides support for Warren's argument, we

14

the application of a lower standard of proof to a sentencing factor is not always problematic in due process terms.

Just months before Warren's sentencing, Almendarez-Torres addressed many of the same questions the Court had faced in McMillan. While Almendarez-Torres did not decide the precise question of what burden of proof should apply when recidivism is used to enhance criminal punishment, it confirmed that recidivism need not be treated as an element of the offense to be charged as part of the indictment and proved beyond a reasonable doubt to a jury (523 U.S. at 247). In addition the Court held (id. at 244-45) that the outcome of the due process analysis is unchanged even if recidivism is used to alter the maximum penalty for a crime, rather than the mandatory minimum sentence as was the case in McMillan.

To return to the Section 2254 standards, we must now decide whether Pennsylvania's application of Section 9714 was contrary to or involved an unreasonable application of the cases just described. We conclude that neither is the case.

As to the first half of that inquiry, the answer is clear. None of those cases dealt with the precise issue of whether a presumption of the sort created by Section 9714 can be applied during sentencing. Hence we cannot conclude that the state's application of such a presumption was "contrary to...clearly established Federal law."

Whether that presumption unreasonably applies any principle clearly established by Supreme Court precedents is a somewhat closer question, but one that we also answer in the negative. In addressing that question, we are mindful that we are not to decide whether we agree with the state court's application of Supreme Court holdings, but rather "whether the state court's application of clearly established federal law

_____

cannot conclude in light of McMillan and Almendarez-Torres that the state court's decision in this case was "contrary to, or involved an unreasonable application of clearly established federal law."

15

was <u>objectively unreasonable</u>" (<u>Williams</u>, 529 U.S. at 409)(emphasis added)).  Even were we to conclude that the state court's application of Supreme Court holdings was incorrect or erroneous, we would not be in a position to issue the writ of habeas corpus unless we were also to conclude that the application of clearly established Supreme Court doctrine was unreasonable (<u>id</u>. at 411).

Both <u>McMillan</u> and <u>Almendarez-Torres</u> provide a reasonable basis of support for the position that a presumption that imposes a burden on a defendant may be constitutionally acceptable if it is triggered by the offender's recidivism and if it applies only after the state has satisfied its burden to prove all facts necessary for conviction.  Thus we cannot conclude that the state court's decision to apply Section 9714 to Warren's sentence was an objectively unreasonable application of clearly established federal law.[5]

Finally, we note the obvious:  Much has happened with respect to sentencing and sentencing factors in the years since Warren was imprisoned.  <u>Almendarez-Torres</u> was just the first in a series of recent Supreme Court cases dealing with such issues that includes <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and has culminated recently with <u>United States v. Booker</u>, 543 U.S. __, 125 S.Ct. 738 (2005).  But we need not consider whether those new cases change the constitutional

---

[5] It is worth recalling the precise nature of the presumption at play in Warren's sentencing.  Section 9714 did not establish a presumption as to the prior conviction itself -- to the contrary, the fact of the prior conviction was admitted by Warren as part of his plea agreement.  Instead the presumption acted only once the recidivism was established.  In the context of a sentencing regime that simply imposes a different sentence based on the fact of a prior conviction, Section 9714 actually gave the judge more discretion to impose the lower sentence.   That makes the Section 9714 presumption quite different from any of the Supreme Court cases discussed above.

16

analysis just described, because we have held that those new holdings are not applicable retroactively to cases on collateral review (as to Apprendi, see United States v. Swinton, 333 F.3d 481, 491 (3d Cir. 2003); as to Booker, see Lloyd v. United States, 407 F.3d 608, 613-15 (3d Cir. 2005)).

Conclusion

Federal habeas relief is available under Section 2254 only if a prisoner demonstrates that "he is in custody in violation of the Constitution or laws or treaties of the United States." We granted Warren a certificate of appealability to review two potential claims along those lines, but our review leads us to conclude that neither claim satisfies Section 2254's requirements.

Nothing in the federal Constitution compels a State to apply its criminal decisions retroactively, and we lack the authority to review the State's own application of its retroactivity principles. In substantive terms, the application of a presumption against Warren that affected only the length of his sentence based on a prior conviction was neither contrary to nor an unreasonable application of the clearly established Supreme Court jurisprudence that existed at the time the sentence was imposed. For those reasons, the order of the District Court is AFFIRMED and Warren's petition for a writ of habeas corpus is DENIED.