Matthew W. Brann, United States District Judge
Caine Pelzer filed this 28 U.S.C. § 2254 petition alleging numerous violations of his constitutional rights during his criminal trial and subsequent state proceedings.[1] On May 9, 2019, Magistrate Judge Martin C. Carlson issued a Report and Recommendation recommending that this Court *369 grant Pelzer's petition and direct the Commonwealth of Pennsylvania to release Pelzer from custody within 90 days unless it reinstates his appellate and post-conviction relief rights.[2] No timely objections were filed to this Report and Recommendation.
Where no objection is made to a report and recommendation, this Court will review the recommendation only for clear error.[3] Regardless of whether timely objections are made, district courts may accept, reject, or modify-in whole or in part-the findings or recommendations made by the magistrate judge.[4] Upon review of the record, the Court finds no clear error in Magistrate Judge Carlson's conclusion that Pelzer is entitled to equitable tolling of the limitations period and should be granted limited relief in the form of an Order directing his release from custody unless his appellate and post-conviction rights are reinstated.[5] Consequently, IT IS HEREBY ORDERED that:
1. Magistrate Judge Martin C. Carlson's Report and Recommendation (Doc. 36) is ADOPTED ;
2. Pelzer's motion for a temporary restraining order (Doc. 26) and motions for preliminary injunctions (Docs. 27, 29) are DENIED ;
3. Pelzer's 28 U.S.C. § 2254 petition (Doc. 1) is GRANTED ; and
4. The Commonwealth of Pennsylvania shall release Pelzer from custody within 90 days of the date of this Order unless it reinstates Pelzer's appellate and post-conviction relief rights.
5. The Clerk of Court is directed to CLOSE this case.
REPORT AND RECOMMENDATION
Martin C. Carlson, United States Magistrate Judge
I. Introduction
This case rests at the intersection of several competing principles governing federal habeas corpus practice. When considering habeas corpus petitions filed by state prisoners, we are enjoined to defer to well-supported state court findings and are instructed to apply a statute of limitations that called for timely action by petitioners. Yet, we are also admonished that this limitations period is subject to equitable tolling in those instances where strict adherence to the statute of limitations results in an injustice. Such equitable tolling may be proper if a petitioner is misled by counsel regarding the status of state court post-conviction litigation.
The instant case calls upon us to balance these principles in a setting where a diligent prisoner received inconsistent and inaccurately misleading information concerning the status of his state post-conviction litigation from counsel. Pending before the court is a petition for writ of habeas corpus filed by the petitioner, Caine Pelzer. (Doc. 1). Pelzer, a state inmate who is currently confined at the State Correctional Institution at Fayette in Labelle, Pennsylvania, is serving a sentence of 22-44 years imprisonment following his conviction in 2002 for multiple offenses, including several counts of robbery, theft, unlawful restraint, and *370 reckless endangerment. Pelzer's petition seeks reinstatement of his state appellate rights, and thirteen additional claims for relief, some of which arise from his trial and appellate counsel's alleged ineffective assistance.
The respondents' response to the petition seeks dismissal of the petition as time-barred by the statute of limitations. They argue that Pelzer's petition is untimely, as his state appeals were improperly filed and thus did not toll the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244. However, it is our view that, while this is an extremely close case, the principle of equitable tolling should be applied to Pelzer's petition, as his attorney's errors and inactions created an exceptional circumstance that prevented him from timely filing this habeas petition. Thus, out of an abundance of caution, we will recommend that Pelzer be afforded limited habeas corpus relief in the form of an order directing the Pelzer's release within 90 days unless the Commonwealth of Pennsylvania reinstates his appeal and post-conviction relief rights. Ross v. Varano, 712 F.3d 784, 804 (3d Cir. 2013).
II. Statement and Facts of the Case
The pertinent background of this case can be simply stated:[1] Caine Pelzer was convicted in the Court of Common Pleas of Luzerne County in 2002 for multiple charges of robbery, theft, unlawful restraint, and reckless endangerment. He was sentenced to a term of 22-44 years imprisonment in April 2002. On appeal, Pelzer retained counsel, and counsel filed a direct appeal that raised a claim of ineffective assistance of trial counsel. While Pelzer's appeal was pending, the Pennsylvania Supreme Court decided Commonwealth v. Grant, 572 Pa. 48, 813 A.2d 726 (2002), which held that claims of ineffective assistance of counsel must be brought in a petition for post-conviction collateral review under Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 et seq. , rather than on direct appeal. Accordingly, the Pennsylvania Superior Court dismissed Pelzer's direct appeal on May 7, 2003 without prejudice to his bringing the ineffective assistance claim in a PCRA petition. Pelzer did not file a petition for allowance of appeal, and thus his conviction and sentence became final on June 6, 2003.
Prior to the dismissal of his direct appeal, Pelzer was informed by his counsel that counsel needed certain information to put in Pelzer's PCRA petition, which included telephone information and records for an alibi witness. What then ensued was a years-long back-and-forth correspondence between Pelzer and his counsel from 2004 to 2007. Thus, in April 2004, counsel informed Pelzer that his time for filing a PCRA petition was about to expire, and that counsel needed the telephone information to subpoena phone records for the alibi witness. This correspondence makes it clear that counsel recognized an urgent need to act in a timely fashion to protect Pelzer's rights.
What is far less clear is whether Pelzer ever received this correspondence. For his part, Pelzer contends that he never received this correspondence, and Pelzer's subsequent conduct seems to confirm that he was unaware that his state post-conviction petition was time-barred. Moreover, prison officials could not confirm Pelzer's receipt of this letter, as there was no prison *371 record of the delivery of this correspondence. In any event, even though counsel was plainly aware of this limitations period, counsel never filed a PCRA petition on Pelzer's behalf, and the statute of limitations expired on June 6, 2004.
Pelzer was apparently unaware of counsel's default because he continued for years to diligently inquire about his PCRA petition following the expiration of this June 2004 deadline. While counsel often ignored Pelzer's entreaties, two years later in June 2006, counsel responded to an inquiry from Pelzer and his sister, which sought information about the status of Pelzer's PCRA petition. Rather than informing Pelzer that his time for filing a PCRA petition had long expired, counsel informed Pelzer that he had never received the phone records, but that he "would be more than happy to [s]ubpoena the necessary records" if he received the information. (Doc. 25, at 42). Counsel informed Pelzer that until he received the records, "your claim remains on hold," suggesting that that Pelzer's PCRA petition remained viable. (Id. ) It appears that counsel received this information in July of 2006, but did not reach out to Pelzer until April 2007, when he wrote Pelzer and stated: "I look forward to finally being in a position to move this matter forward." (Id., at 50).
Following this April 2007 letter, Pelzer wrote to his counsel five times before counsel responded in August. Finally, in August 2007, counsel wrote to Pelzer in response to a "petition" that Pelzer sent for his review. In this letter, counsel applauded Pelzer for his efforts, but noted that he would have to "fine tune" the petition before it would be filed. (Id., at 51). Several weeks later, counsel sent another letter to Pelzer informing him that his petition had timeliness issues and would likely not be accepted by the courts. (Id., at 52). Thereafter, Pelzer sent multiple letters to counsel (Doc. 13-2, at 39-42, 46), inquiring about the status of his PCRA petition, which he believed counsel was going to file. He also wrote to the Luzerne County Clerk of Courts and requested status updates, stating: "I received a letter from my attorney explaining my PCRA would be filed, but I have not received a copy showing that my PCRA was in fact received and docketed by your office." (Id., at 45).
Finally, in March 2008, Pelzer wrote to his counsel requesting a copy of his trial transcript so that he could file his own PCRA petition. After receiving these records, Pelzer filed his PCRA petition in April 2008. After several hearings held by the PCRA court, Pelzer's petition was denied as untimely. On appeal, the Superior Court vacated the decision and remanded it to the PCRA court in light of the PCRA court's orders regarding legal mail logs at SCI Fayette and SCI Greene, where Pelzer had been incarcerated. The PCRA court then held another hearing, in which it determined that Pelzer did not meet the statutory exception to excuse his untimely filing and once again denied his petition. On July 14, 2014, the Superior Court affirmed on appeal, and the Pennsylvania Supreme Court denied Pelzer's petition for allowance of appeal on December 2, 2014.
Pelzer then filed the instant federal habeas corpus petition on January 30, 2015. In his petition, he requests reinstatement of his appellate rights due to the abandonment of his counsel, and thirteen other various claims including ineffective assistance of counsel, violation of his speedy trial rights, sufficiency of the evidence challenges, and jurisdictional claims. (Doc. 1). On June 1, 2015, the respondents responded to the petition, alleging that Pelzer's claims were unexhausted. Thereafter, the matter was stayed pending the outcome of Pelzer's PCRA petition that was *372 pending in state court at the time. (Doc. 20). After his appeals were exhausted, Pelzer moved to reopen the case, (Doc. 21), and the case was reopened on May 5, 2018. (Doc. 23). The respondents filed a response, and Pelzer filed a supplemental memorandum. In their response, the respondents again assert that the petition is untimely, and that equitable tolling principles should not apply. For his part, Pelzer asserts that his attorney's conduct prevented him from timely filing his petition, and thus he should be entitled to equitable tolling of the AEDPA's one-year statute of limitations.
Here, while we regard this as an extremely close case, our review of the record indicates that the conduct of Pelzer's attorney created an exceptional circumstance that prevented him from timely filing this petition, and thus we believe that equitable tolling is warranted on the particular facts of this case. Accordingly, we will recommend that the petition not be dismissed as untimely, and that Pelzer be afforded very limited federal habeas corpus relief in the form of an order directing the Pelzer's release within 90 days unless the Commonwealth of Pennsylvania reinstates his appeal and post-conviction relief rights. Ross v. Varano, 712 F.3d 784, 804 (3d Cir. 2013).
III. Discussion
A. State Prisoner Habeas Relief-The Legal Standard.
(1) Substantive Standards
In order to obtain federal habeas corpus relief, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:
(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
(A) the applicant has exhausted the remedies available in the courts of the State;
..........
(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
28 U.S.C. § 2254(a) and (b).
As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See *373 e.g., Reed v. Farley, 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughn, 382 F.3d 394, 401-02 (3d Cir. 2004).
(2) Deference Owed to State Courts
These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.
First, with respect to legal rulings by state courts, under § 2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. § 2254(d)(l) ; or (2) was "based upon an unreasonable determination of the facts," see 28 U.S.C. § 2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. See Rice v. Collins, 546 U.S. 333, 338-39, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006) ; see also Warren v. Kyler, 422 F.3d 132, 139-40 (3d Cir. 2005) ; Gattis v. Snyder, 278 F.3d 222, 228 (3d Cir. 2002).
In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. See 28 U.S.C. § 2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings. See, e.g., Maggio v. Fulford, 462 U.S. 111, 117, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983) (per curiam); Demosthenes v. Baal, 495 U.S. 731, 734-35, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990). This principle applies to state court factual findings made both by the trial court and state appellate courts. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006). Thus, we may not re-assess credibility determinations made by the state courts, and we must give equal deference to both the explicit and implicit factual findings made by the state courts. Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir. 2000). Accordingly, in a case such as this, where a state court judgment rests upon factual findings, it is well-settled that:
A state court decision based on a factual determination, ..., will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceeding. Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003). We must presume that the state court's determination of factual issues was correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) ; Campbell v. Vaughn, 209 F.3d 280, 285 (3d Cir.2000).
Rico v. Leftridge-Byrd, 340 F.3d 178, 181 (3d Cir. 2003). Applying this standard of review, federal courts may only grant habeas relief whenever "[o]ur reading of the PCRA court records convinces us that the Superior Court made an unreasonable finding of fact." Rolan, 445 F.3d at 681.
*374 (3) Procedural Benchmarks - Statute of Limitations
Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that petitioners timely file motions seeking habeas corpus relief. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244, established a one-year statute of limitations on the filing of habeas petitions by state prisoners. In pertinent part, § 2244(d)(1) provides as follows:
A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an plication created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
See Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 617 (3d Cir. 1998).
The calculation of this limitations period is governed by a series of well-defined rules. At the outset, these rules are prescribed by statute, specifically 28 U.S.C. § 2244(d), prescribes several forms of statutory tolling. First, with respect to tolling based upon a petitioner's direct appeal of his conviction: "The limitation period shall run from the latest of- (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The courts have construed this tolling provision in a forgiving fashion, and in a manner that enables petitioners to toll their filing deadlines for the time periods in which they could have sought further direct appellate review of their cases, even if they did not, in fact, elect to seek such review. Thus, with respect to direct appeals, the statute of limitations is tolled during the period in which a petitioner could have sought discretionary appellate court review, by way of allocator or through a petition for writ of certiorari, even if no such petition is filed. Jimenez v. Quarterman, 555 U.S. 113, 119, 129 S. Ct. 681, 685, 172 L. Ed. 2d 475 (2009). After this period of time passes, however, by statute the judgment of conviction becomes final. 28 U.S.C. § 2244(d)(1)(A).
Section 2244(d)(2), in turn, prescribes a second period of statutory tolling requirements while state prisoners seek collateral review of these convictions in state court, and provides that:
The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.
See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).
In assessing § 2244(d)(2)'s tolling provision, for purposes of tolling the federal habeas statute of limitations, a *375 "properly filed application for State post-conviction or other collateral review" only includes applications which are filed in a timely fashion under state law. Therefore, if the petitioner is delinquent in seeking state collateral review of his conviction, that tardy state pleading will not be considered a "properly filed application for State post-conviction or other collateral review" and will not toll the limitations period. Pace v. DiGuglielmo, 544 U.S. 408, 412-14, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ; Long v. Wilson, 393 F.3d 390, 394-95 (3d. Cir. 2004). Moreover, in contrast to the direct appeal tolling provisions, this post-conviction petition tolling provision does not allow for an additional period of tolling for the petitioner who does not seek further discretionary appellate court review of his conviction and sentence. Miller v. Dragovich, 311 F.3d 574, 578 (3d Cir. 2002).
Beyond this tolling period mandated by statute, it has also been held that AEDPA's one-year limitations period is not a jurisdictional bar to the filing of habeas petitions, Miller, 145 F.3d at 617-18, and, therefore, is subject to equitable tolling. Id. at 618-19. Yet, while equitable tolling is permitted in state habeas petitions under AEDPA, it is not favored. As the United States Court of Appeals for the Third Circuit has observed: "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' Generally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights' The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims' Mere excusable neglect is not sufficient." Id. at 618-19 (citations omitted). Indeed, it has been held that only:
[T]hree circumstances permit[ ] equitable tolling: if
(1) the defendant has actively misled the plaintiff,
(2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or
(3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.
Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001) (quoting Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999) (citations omitted)).
Applying this exacting standard, courts have held that: "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling. See Freeman v. Page, 208 F.3d 572 (7th Cir. 2000) (finding no basis for equitable tolling where the statute of limitations was changed to shorten the time for filing a PCRA only four months prior to the filing of the petition); Taliani v. Chrans, 189 F.3d 597 (7th Cir. 1999) (finding lawyer's inadequate research, which led to miscalculating the deadline, did not warrant equitable tolling)." Id. While courts apply exacting standards to equitable tolling claims, it is evident that complete abandonment of a petitioner by his counsel can constitute one of the extraordinary circumstances justifying such equitable tolling. In Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), the Supreme Court of the United States held that equitable tolling applies to § 2244(d). Id., at 645, 130 S.Ct. 2549. Further, the Court in Holland held that an attorney's actions or inactions, if egregious enough, can constitute an "extraordinary circumstance" that justifies equitable tolling of a habeas petition. Id., at 651-52, 130 S.Ct. 2549 ; see also Ross v. Varano, 712 F.3d 784 (3d Cir. 2013) (upholding a district *376 court's determination of equitable tolling based on attorney misconduct).
It is against these legal benchmarks that we assess the instant petition.
B. Pelzer's Petition Should Not Be Dismissed on Statute of Limitations Grounds.
In the instant case, the respondents contend that Pelzer's petition is untimely under the AEDPA. They assert that, because Pelzer's PCRA petitions were found to be untimely, and thus not "properly filed," the filing of those petitions did not toll the AEDPA's one-year statute of limitations. The respondents also assert that equitable tolling should not apply in this case, as Pelzer did not diligently pursue his rights or encounter any extraordinary circumstances that prevented him from timely filing his instant habeas petition. Although we regard this as a close case, we conclude that Pelzer should be entitled to equitable tolling due to his appellate counsel's inaction and his diligence in pursuing his rights.
We initially note that the PCRA court and the Pennsylvania Superior Court found that Pelzer did not meet the exceptions for tolling his first PCRA petition under 42 Pa. Cons. Stat. § 9545(b)(1)-(2). (Doc. 13-2 at 101-02; Doc. 13-3, at 67, 92-93). This conclusion was based on the fact that Pelzer's attorney sent him a letter in April 2004, which notified him that his PCRA needed to be filed soon in order to be timely. The PCRA court found that, while Pelzer contended that he never received this letter, testimony from mailroom employees at various correctional facilities demonstrated that he could have received correspondence even if it had not been logged in the mailroom, and thus Pelzer did not meet his burden of showing that he did not, in fact, receive the letter and thus did not meet the exception for timely filing. (Doc. 13-3, at 67). On this score, the Superior Court deferred to the PCRA court's credibility determinations and upheld the denial of Pelzer's PCRA petition as untimely. (Id., at 93).[2]
We conclude that this reliance on the state trial court's findings is misplaced for several reasons. First, the evidence cited by the court does not support an inference that Pelzer was clearly placed on notice of the imminent expiration of this state limitations period. For his part, Pelzer denied receiving a letter from his counsel in April 2004 alerting him to this bar of the statute of limitations. Pelzer's subsequent conduct, which entails repeated requests for assistance in this PCRA litigation over the ensuing four years, certainly supports his claim that he was not alerted to this time-bar in 2004. Moreover, the efforts to corroborate Pelzer's receipt of this April 2004 letter from his counsel actually undermined the inference that Pelzer had notice of this letter, since prison officials could not confirm receipt of the correspondence.
Further, the state court's focus on Pelzer's conduct ignores the defaults of counsel. Counsel is the one person who undisputedly knew that there was an impending statute of limitations for PCRA filing, yet counsel took no action to preserve Pelzer's rights by submitting a timely petition. This inaction doubtless prejudiced Pelzer.
Counsel's subsequent conduct, which consisted of either ignoring or providing misleading responses to Pelzer's entreaties, further compounded the prejudice experienced by the petitioner. Simply put, if counsel had been candid and transparent *377 with Pelzer in June 2004, Pelzer could have made a more compelling equitable tolling showing to the state courts based upon what would have been a minor oversight in filing his PCRA petition. Instead, counsel's communications misled Pelzer regarding the status of his state case for several years, creating greater obstacles for Pelzer when he finally sought equitable tolling relief himself after having been abandoned by counsel in 2008.
Finally, the question before this court is not whether the state court's determination of the PCRA petition's timeliness under state law was correct or incorrect, as it is well-settled that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Instead, the doctrine of equitable tolling "asks whether federal courts may excuse a petitioner's failure to comply with federal timing rules, an inquiry that does not implicate a state court's interpretation of state law." Holland, 560 U.S. at 650, 130 S.Ct. 2549 (emphasis in original). Here, Pelzer's 2015 habeas petition clearly falls outside of the one-year statute of limitations, as his conviction and sentence became final in 2003, some twelve years prior. However, although we must generally defer to the factual findings of the state courts when presented with habeas petitions filed by state prisoners, we may also examine the petitioner's case to determine whether he may be entitled to equitable tolling of the AEDPA's statute of limitations.
As we have stated, the Supreme Court has held that attorney error, if egregious enough, may constitute an "extraordinary circumstance" that prevents a petitioner from filing a timely habeas petition and warrants equitable tolling of the AEPDA's one-year statute of limitations. The Court of Appeals for the Third Circuit addressed such a claim in Ross v. Varano, 712 F.3d 784 (3d Cir. 2013), and upheld the district court's determination that equitable tolling was warranted. In Ross, the Court of Appeals examined the Supreme Court's equitable tolling standards, noting:
As with most issues involving a court's exercise of equitable powers, "[t]here are no bright lines in determining whether equitable tolling is warranted in a given case." Pabon, 654 F.3d at 399. In Holland, however, the Supreme Court emphasized that in considering whether there could be equitable tolling, courts should favor flexibility over adherence to mechanical rules. 130 S. Ct. at 2563. In this regard, "the particular circumstances of each petitioner must be taken into account," Pabon, 654 F.3d at 399, and each decision made on a "case-by-case basis." Holland, 130 S. Ct. at 2563 (quoting Baggett v. Bullitt, 377 U.S. 360, 375, 84 S. Ct. 1316, 1324, 12 L.Ed.2d 377 (1964) ). Thus, we must "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." Holland, 130 S. Ct. at 2563. We have held that equitable tolling is appropriate when principles of equity would make the rigid application of a limitation period unfair, but that a court should be sparing in its use of the doctrine. Pabon, 654 F.3d at 399 ; Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).
Ross, 712 F.3d at 799.
Ultimately, the Court found that the petitioner in that particular case had diligently pursued his rights, as he continuously pursued his state court appeal and attempted to communicate frequently with his attorney and the courts about the status of his appeal. Id., at 800-01. Moreover, *378 the Court found that the conduct of the petitioner's attorney-which included ignoring communications with his client, giving misleading information to his client and the courts, and failing to file appeals and other motions-created an "extraordinary circumstance" that justified tolling the petitioner's habeas petition. Id., at 802-04. See also Randle v. United States, 954 F.Supp.2d 339, 347 (E.D. Pa. 2013) (equitable tolling warranted when attorney ignored petitioner's communications, failed to file documents while representing they would be filed, and affirmatively lead petitioner to believe his federal sentence would be challenged).
Here, while we regard this as an extremely close case, in our view, the petitioner's diligence in pursuing his rights and the actions, or inaction, of petitioner's counsel warrant equitable tolling of this habeas petition. Pelzer's conviction and sentence became final on June 6, 2003-one year after he could have filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court. Thus, his PCRA petition would have had to be filed by June 6, 2004, one year after his conviction and sentence became final. See 42 Pa. Cons. Stat. § 9545(b)(1). On this score, we note that there is a host of correspondence between Pelzer and his attorney in 2002 and 2003 regarding his appeal and subsequent PCRA petition. (Doc. 13-2, at 14, 24-25, 29; Doc. 25, at 35-39).[3] Thus, Pelzer was plainly pursuing this relief in a diligent manner. Counsel's response to this diligence, however, was inconsistent, inconsiderate, indolent, and occasionally misleading. A letter dated May 8, 2003, sent from counsel to Pelzer, confirms that counsel intended to file Pelzer's PCRA petition following the denial of his direct appeal. (Doc. 13-2, at 29). The next correspondence from counsel is dated April 7, 2004-about two months prior to the PCRA deadline expiring. (Doc. 25, at 40). This letter informs Pelzer that his deadline is approaching, and that counsel needed information in order to file the PCRA. (Id. ) Pelzer testified at the PCRA hearing that he never received this letter.
Pelzer continued to inquire into the status of his PCRA petition after this deadline passed. While many of Pelzer's inquiries went unanswered, more than two years later, on June 26, 2006, counsel sent a letter to Pelzer and his sister in response to an inquiry he received from them. (Doc. 25, at 41-42). This letter informed Pelzer and his sister that, in order to raise his ineffective assistance of counsel claim in a PCRA petition, counsel needed information regarding telephone records for an alibi witness. (Id. ) Counsel then stated that he would be happy to subpoena the records if he can get the information he needs and concludes the letter by stating "I also hope that you, your family members, or Ms. Harvey can provide me with the information at this time so that something can be done to move this case forward ." (Id., at 42) (emphasis added). Given the fact that the bar of the state statute of limitations may have run two years earlier, this letter is, at best, misleading, and created hope where none existed. Subsequently, counsel received the telephone information he had *379 been lacking, (Doc. 25, at 43), and in April 2007, sent Pelzer a letter, which concluded with the statement: "I look forward to finally being in a position to move this matter forward." (Id., at 50). Finally, in August 2007, Pelzer sent counsel a "brief" for a PCRA petition that he prepared himself, to which counsel responded that he would look at the information and "fine tune" it before it was filed, and that he intended to schedule a telephone conference with Pelzer. (Id., at 51). A few weeks later, on August 22, 2007, counsel informed Pelzer that his petition would likely have a timeliness issue. (Id., at 52).
Significantly, after this August 22 letter from counsel, counsel did not send another letter to Pelzer until March 2008, even though Pelzer and his sister sent multiple letters to counsel between August 2007 and March 2008 inquiring about the status of Pelzer's PCRA petition. (Doc. 13-2, at 33-37, 39-46). Indeed, there is no record of counsel ever responding to the constant inquiries by Pelzer regarding his petition until March 2008, when counsel forwarded a copy of Pelzer's trial transcript to him and stated that he would arrange to visit Pelzer at SCI-Camp Hill. (Doc. 25, at 53). This was the last correspondence between Pelzer and his counsel regarding the PCRA petition.
On this score, we conclude that counsel's actions and inaction were grave enough in this particular case to warrant equitable tolling of Pelzer's habeas petition. A review of the correspondence between counsel and Pelzer from 2003 to 2008 makes clear that Pelzer was relying on counsel to file a PCRA petition on his behalf. This is evidenced by Pelzer's multiple letters and constant inquiries to counsel throughout this time period, which inquired about the status of the PCRA petition.
Moreover, and significantly, counsel's own words in his correspondence to the petitioner were grossly misleading and indicated to Pelzer that his case was still active and ongoing. While counsel testified at the PCRA hearing that he had closed Pelzer's case in 2003 or 2004, and that he only responded to Pelzer's inquiries as a courtesy, his statements in his letters to Pelzer and Pelzer's sister clearly indicate that he informed them of his attempts to "move the matter forward" on several occasions in 2006 and 2007-long after the expiration of the PCRA limitations period. Additionally, in August 2007, counsel wrote to Pelzer in response to a "petition" that Pelzer sent for his review. In this letter, counsel applauded Pelzer for his efforts on the petition, but noted that he would have to "fine tune" the petition before it would be filed. Thus, counsel's contention that he was no longer representing Pelzer, and that he never, at that point, intended to file a PCRA petition, are belied by his own statements that he was, in fact, trying to move the case forward. Indeed, while Pelzer may or may not have been aware of the original filing deadline of his PCRA petition, counsel's correspondence in 2006 and 2007 certainly indicates that counsel intended to continue with the matter, and thus Pelzer reasonably relied on counsel's assertions that the matter was progressing forward.
This correspondence is also indicative of Pelzer's diligence in asserting his rights. Pelzer was informed by counsel in 2003 that counsel was going to file his PCRA petition. (Doc. 13-2, at 29). Although counsel had informed Pelzer in April 2004 that his statute of limitations was expiring soon, Pelzer contends that he never received this letter. Prison officials could not confirm the receipt of this letter by Pelzer, yet the state court inferred receipt of the correspondence to support its finding that he failed to act with diligence. However, subsequent events undermine confidence *380 in this inference since Pelzer was still repeatedly inquiring about his petition after April 2004, and was clearly relying on counsel's representations that counsel was going to file the petition. Moreover, and notably, years elapsed before counsel clearly corrected Pelzer's misapprehensions regarding this status of this case. As we have noted, counsel indicated to Pelzer in several letters in 2006 and 2007 that they could "move the matter forward," and further, informed Pelzer in August 2007 that he would "fine tune" Pelzer's work before he filed the PCRA petition. Pelzer continued to inquire about the status of his petition after counsel had indicated that the matter could move forward, indicating that Pelzer actually believed counsel was still planning to file a PCRA petition for him. On this score, we believe it was reasonable for Pelzer to continue to rely on his counsel's assertions that his PCRA petition could still be filed, even though the deadline had actually passed.
Furthermore, and significant in our view, after Pelzer's many failed attempts to get in contact with counsel between 2007 and 2008, counsel eventually sent Pelzer his trial transcripts in March 2008, wholly abandoning Pelzer. One month later, Pelzer acted with dispatch and filed his pro se PCRA petition in April 2008. Thus, the respondents' assertion that Pelzer was not diligently pursuing his rights is contradicted by the record, which indicates that Pelzer filed his petition shortly after receiving the relevant information he needed, and after he was actually informed by counsel that counsel was not going to file a petition on his behalf. Accordingly, we cannot conclude that Pelzer failed to diligently pursue his rights. Quite the contrary, Pelzer, along with his family members, continuously sent letters to counsel that inquired about his PCRA petition, and even sent inquiries to the court to update him on the status of his petition. Additionally, when counsel stopped answering Pelzer's letters for almost seven months, Pelzer continued to send inquiries to counsel and eventually requested his trial transcripts so that he could file the petition himself. During this time, Pelzer also sent letters to the Luzerne County Clerk of Courts requesting confirmation that counsel had filed his PCRA petition. Finally, once Pelzer actually filed his PCRA petition, he diligently pursued the appeals process, and after his PCRA appeal and petition for allowance of appeal to the Pennsylvania Supreme Court were denied, he filed the instant habeas action in January 2015.[4]
In sum, we conclude that, although this is a close case, Pelzer should be entitled to equitable tolling, and his habeas petition should not be dismissed as untimely under the AEDPA. The correspondence between Pelzer and his state appellate counsel demonstrates that Pelzer was reasonably diligent in pursuing both his state and federal rights in this case. Further, in our view, the facts of this particular case indicate that Pelzer faced an "extraordinary circumstance" that prevented his timely filing, as his attorney's actions were misleading, evasive, and resulted in Pelzer's state petitions being dismissed as untimely, which the respondents now rely on as grounds for the dismissal of this federal habeas petition. Accordingly, we conclude that equitable tolling is appropriate in this case, where "principles of equity would make the rigid application of [the] limitation period unfair." Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998).
*381 Having made these findings we conclude that the appropriate form of relief for Pelzer is the limited relief endorsed by the appellate court in the past when presented with equitable tolling of otherwise time-barred claims due to abandonment by counsel. In this setting, the Court of Appeals has stated that the appropriate form of relief is:
[T]o order his release within 90 days unless the Commonwealth of Pennsylvania reinstates his appeal. [This form of relief is appropriate] because principles of comity and jurisdiction prohibit a district court from ordering the reinstatement of a state court appeal: "[A] district court's power to grant a writ of habeas corpus under 28 U.S.C. § 2254 is limited on this record to directing [the prisoner's] release from custody if the state fails to correct the constitutional violation." Barry v. Brower, 864 F.2d 294, 296 (3d Cir.1988).
Ross v. Varano, 712 F.3d 784, 804 (3d Cir. 2013).
Here, the first form of relief sought by Pelzer in his petition is reinstatement of his appeal and post-conviction relief rights. This limited form of relief is appropriate given that those rights may have been forfeited, in large measure, due to counsel's inaction. Furthermore, granting this limited relief ensures that the merits of any claims raised by Pelzer are fully developed and considered by the state courts. Therefore, we recommend that the court follow this course in resolving the pending petition.
IV. Recommendation
Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED THAT the respondents request to dismiss the petition as time-barred be DENIED; and to cure the default caused by the inaction of state counsel IT IS FURTHER RECOMMENDED that Pelzer be afforded limited relief in the form of an order directing the Pelzer's release within 90 days unless the Commonwealth of Pennsylvania reinstates his appeal and post-conviction relief rights. Ross v. Varano, 712 F.3d 784, 804 (3d Cir. 2013).
The petitioner is further placed on notice that pursuant to Local Rule 72.3:
Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.
Submitted this 9th day of May, 2019.

Docs. 1, 5.

Doc. 36.

Fed. R. Civ. P. 72(b), advisory committee notes; see Henderson v. Carlson , 812 F.2d 874, 878 (3d Cir. 1987) (explaining that court should in some manner review recommendations regardless of whether objections were filed).

28 U.S.C. § 636(b)(1) ; Local Rule 72.31.

See Ross v. Varano , 712 F.3d 784, 804 (3d Cir. 2013).

The factual background of this case is taken from the Petitioner's memorandum, the Respondent's response to the petition, and Pelzer's supplemental memorandum. (Docs. 5, 13, 25).

Pelzer also filed a second PCRA petition, which raised many of the same issues he now raises in his instant habeas petition. This PCRA petition was also denied as untimely, as the first petition had been dismissed as untimely.

Pelzer's counsel initially filed a direct appeal raising a claim of ineffective assistance of trial counsel, which alleged trial counsel's failure to obtain phone records for an alibi defense. (Doc 13-2, at 15). While the appeal was pending, the Pennsylvania Supreme Court decided Commonwealth v. Grant, 572 Pa. 48, 813 A.2d 726, 738 (2002), which held that ineffective assistance of trial claims must be raised in a PCRA petition, rather than on direct appeal. Thus, the Superior Court dismissed Pelzer's direct appeal without prejudice, allowing him to file his ineffective assistance claim in a PCRA petition. (Doc. 13-2, at 26).

Pelzer filed a second PCRA petition, which the PCRA court denied in 2016 and the Superior Court affirmed in 2017. (See Doc. 21, at 5). The instant habeas petition was stayed pending the outcome of Pelzer's state appeals and was reopened in May 2018. (Doc. 23).